UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORGAN HILL CONCERNED PARENTS ASSOC., CONCERNED PARENTS ASSOC., | No.  2:11-cv-3471-KJM-AC |
| Plaintiffs, | ORDER |
| v. | |
| CALIFORNIA DEPARTMENT OF EDUCATION, | |
| Defendant. | |

The court heard argument on defendant California Department of Education's ("CDE's") motion to dismiss, or in the alternative, motion for a more definite statement on July 27, 2012.  (ECF 13.)  Rony Sagy appeared for plaintiffs; Paul Lacy appeared for defendant. For the following reasons, the court DENIES defendant's motion to dismiss and motion for a more definite statement.

I.      STATUTORY BACKGROUND

The federal Individuals with Disabilities Education Act ("IDEA") establishes a comprehensive regulatory framework to improve the schooling of disabled individuals. 20 U.S.C. § 1400, *et. seq.*  IDEA's framework and California's associated laws have been described helpfully as follows:

/////

IDEA is Spending Clause legislation. *Virginia Office of Prot. & Advocacy v. Virginia, Dept. of Educ.*, 262 F. Supp. 2d 648, 658 (E.D. Va. 2003). 20 U.S.C. § 1411(a)(1) directs the Secretary of Education to make grants to States "to assist them to provide special education and related services to children with disabilities in accordance to this subchapter." As a federal spending program, IDEA operates "much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions." *Pennhurst State Sch. & Hosp. v. Halderman* ("*Pennhurst I*"), 451 U.S. 1, 17 (1981). "Consequently, under the IDEA a state is eligible for financial assistance only if it first 'demonstrates to the satisfaction of the Secretary" that, among other things, "children with disabilities and their parents are afforded the procedural safeguards required by section 1415.'" *Virginia Office of Prot.*, 262 F. Supp. 2d 648, 658-659 (quoting 20 U.S.C. § 1412(a)(6)(A)).

IDEA and its regulations 34 C.F.R. §§ 300.1, *et seq.*, provide procedural and substantive standards to educate students with disabilities. 20 U.S.C. § 1401(d). IDEA requires a state, to receive federal financial assistance, to effectuate a policy to assure disabled children a free appropriate public education ("FAPE"). 20 U.S.C. § 1412(a)(1). A FAPE requires special education and related services at public expense, under public supervision, and with no charge to the student or parents. 20 U.S.C. §§ 1401(9) and (29).

IDEA requires a participating state to submit to the U.S. Department of Education a plan of policies, procedures and program descriptions. 20 U.S.C. § 1412(a). California participates in IDEA, adopted a federally-approved state plan, and enacted statutes and regulations to comply with federal requirements. *See* Cal. Ed. Code, §§ 56000, *et seq.*; Cal. Code Regs., Tit. 5, §§ 3000, *et seq.* Each disabled student's instruction is based on an Individualized Education Program ("IEP"), pursuant to 20 U.S.C. § 1414(d). Parents are entitled to file a complaint with CDE concerning matters of identification, evaluation or educational placement of a child or FAPE provision. 20 U.S.C. § 1415(b)(6); Cal. Code Regs., Tit. 5, §§ 4600, *et seq.*

Under California's plan, the "district, special education local plan area, or county office of education" of the child's residence is responsible to identify disabled children, to assess suspected disability, to determine educational placements and related services through an IEP, and to provide needed education and related services. Cal. Educ. Code, §§ 56300, 56302, 56340, 56344(b).

[. . .]

As to a proposal or refusal to initiate or change the identification, evaluation or educational placement of a child, or the provision of a FAPE, parents may request an administrative "due process hearing" before an independent and impartial hearing officer to challenge the result. 20 U.S.C. § 1415(f); Cal. Ed. Code, §§ 56501, *et seq.*; 34 C.F.R. §§ 300.506, 300.507, 300.508. CDE is required to enter into

an interagency agreement with another state agency or contract with a nonprofit organization to provide the independent and impartial process. Cal. Ed. Code, § 56504.5. Pursuant to an interagency agreement, the Office of Administrative Hearings conducts the due process hearings and renders final administrative decisions. Cal. Ed. Code, § 56505(h). A party subject to an unfavorable final administrative decision may seek de novo review by a court of competent jurisdiction. 20 U.S.C. § 1415(i)(2)(A); Cal. Ed. Code, § 56505(k).

*S.A. v. Tulare Cnty. Office of Ed.*, No. CV F 08-1215 LJO GSA, 2009 WL 30298, at *3–4 (E.D. Cal. Jan. 6, 2009).

In addition to due process hearings, parents and students have recourse to state complaint resolution procedures ("CRP").  34 C.F.R. §§ 300.151–300.153.  Under the CRP, parents and students may file a complaint with the state educational agency ("SEA") when a local education agency ("LEA") is not following special education laws or procedures or has not implemented what is already specifically written into a student's IEP.  While appeals to district courts from a CRP determination are not provided for in the federal CRP regulations, courts in this Circuit have entertained them.  *See, e.g.*, *Christopher S. v. Stanislaus Cnty. Office of Educ.*, 384 F.3d 1205, 1211 (9th Cir. 2004); *S.A.*, 2009 WL 30298, at *8.

II.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Morgan Hill Concerned Parents Association and Concerned Parents Association ("plaintiffs") are unincorporated associations composed of parents of children with disabilities.  (First Amended Complaint ("FAC") ¶ 4.)  The purpose of these associations is to protect the legal rights of disabled children.  (*Id.*)  Defendant CDE is an SEA that oversees the local school districts throughout California.  (FAC ¶ 5.)  Plaintiffs filed their amended complaint on April 23, 2012, alleging defendant has not ensured FAPE by not complying with its monitoring, investigating, and enforcement obligations under the IDEA.  (FAC ¶ 37.)

On June 13, 2012, defendant filed the present motion to dismiss both for lack of jurisdiction and for failure to state a claim, or in the alternative for a more definite statement. (ECF 13.)  Plaintiffs opposed the motion on June 29, 2012 (ECF 14), and defendant replied July 6, 2012 (ECF 15).  The court heard oral argument on the motion on August 6, 2012.  (Hearing Tr., ECF 20.)

3

1    III.    LEGAL STANDARDS

2           A.      Motion to Dismiss for Lack of Subject Matter Jurisdiction

3                   Federal courts are courts of limited jurisdiction and, until proven otherwise, cases

4    lie outside the jurisdiction of the court.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511

5    U.S. 375, 377–78 (1994).  Lack of subject matter jurisdiction may be challenged by either party

6    or raised *sua sponte* by the court.  FED. R. CIV. P. 12(b)(1); FED. R. CIV. P. 12(h)(3); *see also*

7    *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583–84 (1999).  A Rule 12(b)(1) jurisdictional

8    attack may be either facial or factual.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  In a

9    facial attack, the complaint is challenged as failing to establish federal jurisdiction, even assuming

10   all the allegations are true and construing the complaint in the light most favorable to a

11   plaintiff.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

12                  By contrast, in a factual attack, the challenger provides evidence that an alleged

13   fact is false, or a necessary jurisdictional fact is absent, resulting in a lack of subject matter

14   jurisdiction.  *Id.*  In these circumstances, the allegations are not presumed to be true and "the

15   district court is not restricted to the face of the pleadings, but may review any evidence, such as

16   affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction."

17   *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).  "Once the moving party has

18   converted the motion to dismiss into a factual motion by presenting affidavits or other evidence

19   properly brought before the court, the party opposing the motion must furnish affidavits or other

20   evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  *Savage v.*

21   *Glendale Union High Sch.*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).

22                  Jurisdictional dismissal is "exceptional" and warranted only "'where the alleged

23   claim under the constitution or federal statutes clearly appears to be immaterial and made solely

24   for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and

25   frivolous.'"  *Safe Air for Everyone*, 373 F.3d at 1039 (quoting *Bell v. Hood*, 327 U.S. 678, 682-83

26   (1946)).  The Ninth Circuit has held that "[j]urisdictional finding of genuinely disputed facts is

27   inappropriate when 'the jurisdictional issue and substantive issues are so intertwined that the

28   question of jurisdiction is dependent on the resolution of factual issues going to the merits of an

4

1   action.'" *Sun Valley Gasoline, Inc. v. Ernst Enters., Inc.*, 711 F.2d 138, 139 (9th Cir. 1983)

2   (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)).  "Normally, the

3   question of jurisdiction and the merits of an action will be considered intertwined where . . . a

4   statute provides the basis for both the subject matter jurisdiction of the federal court and the

5   plaintiff's substantive claim for relief."  *Id.* (quotation omitted).  Where a jurisdictional attack is

6   mounted against a claim that implicates statutory interpretation, the court should refrain from

7   dismissing where an interpretation is available that supports jurisdiction.  *See Steel Co. v. Citizens*

8   *for a Better Env't*, 523 U.S. 83, 89 (1998) ("[T]he district court has jurisdiction if 'the right of the

9   petitioners to recover under their complaint will be sustained if the Constitution and laws of the

10  United States are given one construction and will be defeated if they are given another.'" (quoting

11  *Bell*, 327 U.S. at 685 (1946)); *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage*

12  *Leasehold & Easement in the Cloverly Subterranean Geological Formation*, 524 F.3d 1090, 1094

13  (9th Cir. 2008).

14      B.      Motion to Dismiss for Failure to State a Claim upon Which Relief Can Be
                Granted

15

16          Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to

17  dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may

18  dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged

19  under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

20  1990).

21          Although a complaint need contain only "a short and plain statement of the claim

22  showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to survive a motion

23  to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a

24  claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

25  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something

26  more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and

27  conclusions' or 'a formulaic recitation of the elements of a cause of action . . . .'"  *Id.* (quoting

28  Twombly, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss

for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  This rule does not apply to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (quoted in *Twombly*, 550 U.S. at 555), nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A court's consideration of documents attached to a complaint or incorporated by reference or matter of judicial notice will not convert a motion to dismiss into a motion for summary judgment.  *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).

C.      Motion for a More Definite Statement

A motion for a more definite statement under Rule 12(e) "should not be granted unless the defendant cannot frame a responsive pleading." *Famolare, Inc. v. Edison Bros. Stores, Inc.*, 525 F. Supp. 940, 949 (E.D. Cal. 1981).

IV.     ANALYSIS

Defendant seek to dismiss plaintiffs' complaint in its entirety both for lack of jurisdiction and for failure to state a claim.  The court will address subject matter jurisdiction and then failure to state a claim arguments.  Finally, the court will consider defendant's alternative motion for a more definite statement.

A.      Subject Matter Jurisdiction

Defendant argues that this court does not have subject matter jurisdiction over plaintiffs' claims because plaintiffs do not have a private right of action under the IDEA.  (Def.'s

1    Mot. to Dismiss at 5, ECF 13-1.)  Plaintiffs base jurisdiction upon 28 U.S.C. § 1331[1] and

2    20 U.S.C. § 1415(i)(2), among other statutes.  (FAC ¶ 1.)  20 U.S.C. § 1415(i)(2) explicitly

3    confers a private right of action for claims "relating to the identification, evaluation, or

4    educational placement of the child, or the provision of a free appropriate public education to such

5    child."  20 U.S.C. § 1415(b)(6).

6           The absence of legislative provision of a private right of action is not jurisdictional

7    unless a plaintiff's claims are "immaterial," "insubstantial," or "frivolous" and made solely for

8    the purpose of manufacturing jurisdiction.  *Safe Air for Everyone*, 373 F.3d at 1039.  Plaintiffs'

9    claims here are not immaterial, insubstantial, or frivolous.  Even if section 1415(i)(2) of the IDEA

10   did not confer jurisdiction on this court by creating a private right of action, no provision of IDEA

11   divests the court of authority under 28 U.S.C. § 1331 to review CDE's compliance with federal

12   law.  *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 642 (2002) (stating the

13   same in a case reviewing FCC Commissioner's compliance with 47 U.S.C. § 252(e)(6)).

14   Moreover, where a jurisdictional attack is mounted against a claim that implicates statutory

15   interpretation, the court should refrain from dismissing where an interpretation is available that

16   supports jurisdiction.  *See Steel Co.*, 523 U.S. at 89.  This court has subject matter jurisdiction

17   under 28 U.S.C. § 1331.

18          B.      Private Right of Action, Standing, and Exhaustion

19          In addition to asserting plaintiffs do not have a private right of action, defendant

20   also argues in response to the court's *sua sponte* question at hearing that plaintiffs do not have

21   standing to bring claims of systemic IDEA noncompliance against the CDE.  (ECF 20 at 2, 4.)

22   Defendant also contends that plaintiffs did not exhaust their administrative remedies.[2]  (ECF 13-1

23   at 16–17.)  The court addresses these three arguments in turn, concluding they each lack merit.

24   _____

25          [1] Section 1331 reads: "The district courts shall have original jurisdiction of all civil actions
     arising under the Constitution, laws, or treaties of the United States."

26
27          [2] Defendant also argues that plaintiffs' claims, to the extent they seek redress for denying
     FAPE to individual students, are time-barred by the IDEA's statute of limitations.  (ECF 13-1 at
     17.)  The court does not address this argument because plaintiffs do not seek individual remedies.

28   (*See* FAC at 34-35.)

1           1.      IDEA Private Right of Action

2                   Defendant presents two arguments against this court's finding a private right of

3    action for claims alleging CDE's systemic noncompliance with the IDEA, which is an issue of

4    first impression in the Ninth Circuit.  The first argument is that as Spending Clause legislation,

5    the IDEA cannot impose upon the state a private cause of action not clearly spelled out.  (ECF 13-

6    1 at 6.)  The second argument is that the statutory scheme created by the IDEA is upset if the

7    court reads a private cause of action into the statute.  (*Id.*)

8                   Plaintiffs argue that every other court entertaining a case such as this has found a

9    private right of action, and that as a matter of statutory construction Congress did not intend to

10   foreclose a private right of action.  (ECF 14 at 5-9.)  Subsection 1412(a)(14)(E) states that no

11   private right of action arises out of SEA actions specifically enumerated in that paragraph.  (ECF

12   20 at 29–31.)  With reference to *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. at 642-

13   43, plaintiffs argue that if certain actions are made reviewable, that does not mean review of

14   others is excluded; if Congress had intended for the relevant sections of the IDEA not to create

15   private rights of action, it would have expressly stated so instead of restricting the declaration to

16   one limited paragraph.  (ECF 20 at 29.)

17                  Defendant's Spending Clause argument draws on *C.O. v. Portland Public School*,

18   679 F.3d 1162 (9th Cir. 2012), which observes that "the typical remedy for state noncompliance

19   with federally imposed conditions is not a private cause of action for noncompliance but rather

20   action by the Federal Government to terminate funds to the State."  679 F.3d at 1167 (quoting

21   *Gonzaga Univ. v. Doe*, 536 U.S. 273, 280 (2002) (internal quotations omitted)).  In *Virginia*

22   *Office of Protection & Advocacy v. Virginia Department of Education*, 262 F. Supp. 2d 648 (E.D.

23   Va. 2003) ("the *Virginia* case"), the court observed that federal statutes like the IDEA, that rely

24   on the spending power function, are similar to contracts with the states.  262 F. Supp. 2d at 658

25   (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)).  In exchange for

26   money, the states agree to undertake certain obligations.  *Id.*  The obligations of the states must be

27

28

knowing and voluntary, which requires that the obligation be clearly spelled out.[3]  *Id.* (quoting *Pennhurst*, 451 U.S. at 17).  This "concept is commonly known as *Pennhurst*'s 'clear statement rule.'"  *Id.*  Defendant argues that in this case, the obligation to be responsible to private citizens is not clearly spelled out and no textual inference supports plaintiffs' position because the USDOE is the entity that ordinarily enforces the administrative and reporting duties imposed upon the SEAs.  (ECF 13-1 at 6.)

Given the statutory language and structure, and the weight of judicial precedent, the court finds plaintiffs have a private right of action to challenge CDE's alleged systemic noncompliance with its IDEA obligations.  The IDEA creates a private right of action in subsection 1415(i)(2)(A), which reads:

> Any party aggrieved by the findings and decision made under subsection (f) or (k) who does not have the right to an appeal under subsection (g), and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.

Moreover, subsection 1415(i)(3)(A) provides: "The district courts of the United States shall have jurisdiction of actions brought under this section without regard to the amount in controversy." Where Congress did not grant parties a private right of action under the IDEA, it withheld such a grant explicitly:

> Notwithstanding any other individual right of action that a parent or student may maintain under this subchapter [sections 1412-1427] nothing in this paragraph shall be construed to create a right of action on behalf of an individual student for the failure of a particular State educational agency or local educational agency staff person to be highly qualified, or to prevent a parent from filing a

/////

---

[3] The court in the *Virginia* case ultimately found that the IDEA did not create a private right of action to challenge a school board's handling of a CRP complaint.  *Id.* at 659.  As also discussed below, this holding is not persuasive in this Circuit because it contradicts Ninth Circuit precedent that entertains parties' appeals from CRP complaints.  *See, e.g.*, *Christopher S. v. Stanislaus Cnty. Office of Educ.*, 384 F.3d 1205, 1211 (9th Cir. 2004).

complaint about staff qualifications with the State educational
agency as provided for under this subchapter.

20 U.S.C. § 1412(a)(14)(E).  In other words, subsection 1415(i)(2) expressly grants a private right

of action under subsection (f), which references complaints made under subsection (b)(6):

"Whenever a complaint has been received under subsection (b)(6) or (k), the parents or the local

educational agency involved in such complaint shall have an opportunity for an impartial due

process hearing . . . ."  Subsection (b)(6), in turn, provides that states must provide any party an

opportunity to present a complaint "with respect to any matter relating to the identification,

evaluation, or educational placement of the child, or the provision of a free appropriate public

education to such child."  20 U.S.C. § 1412(b)(6).  This court finds, in company with the Third

Circuit, that claims alleging a SEA's systemic failure to comply with its IDEA obligations, which

results in a systematic denial of FAPE, are claims "with respect to any matter relating to the

identification, evaluation, or educational placement of the child, or the provision of a free

appropriate public education to such child."  *Beth V. v. Carroll*, 87 F.3d 80, 86 (3d Cir. 1995)

(finding private right of action for complaints that Pennsylvania Department of Education had

consistently failed to investigate and timely resolve IDEA complaints).  Inasmuch as plaintiffs'

failure to investigate claim relates to the CRP administrative process, the Ninth Circuit impliedly

has recognized these kinds of claims as supported by a private right of action, by entertaining

them.  *Christopher S. v. Stanislaus Cnty. Office of Educ.*, 384 F.3d 1205, 1211 (9th Cir. 2004);

*see also S.A. v. Tulare Cnty. Office of Ed.*, No. CV F 08-1215 LJO GSA, 2009 WL 30298, at *7–

8 (E.D. Cal. Jan. 6, 2009) (distinguishing the *Virginia* case and following *Beth V.* to find plaintiffs

had private right of action against CDE for its failure to produce educational records under the

IDEA).

Moreover, the IDEA explicitly states that SEAs are responsible for ensuring that

"the requirements of this subchapter are met," 20 U.S.C. § 1412(a)(11)(A)(i), and requires

"States" to monitor LEAs and to enforce "this subchapter," 20 U.S.C. § 1416(a)(1)(C).  These

IDEA provisions demonstrate that Congress intended states to be responsible for enforcing the

IDEA and intended individual parents and students to have private recourse when states shirk

10

1   their responsibility, which satisfies *Pennhurst*'s clear statement standard.  *See Pennhurst*,

2   451 U.S. at 17–18 ("[I]n those instances where Congress has intended the States to fund certain

3   entitlements as a condition of receiving federal funds, it has proved capable of saying so

4   explicitly.").

5         Other courts also have concluded that individual parents and students can bring

6   IDEA claims alleging a SEA systemically is not complying with its IDEA obligations.  In *New*

7   *Jersey Protection & Advocacy, Inc. v. New Jersey Department of Education*, 563 F. Supp. 2d 474

8   (D.N.J. 2008) ("the *New Jersey* case"), plaintiffs, a collection of advocacy groups for disabled

9   schoolchildren, sued the New Jersey Department of Education ("NJDOE"), as well as numerous

10  individual school boards.  The first claim presented by plaintiffs alleged a violation of the IDEA

11  by, among other things, "(a) failing to provide children with disabilities with a free appropriate

12  public education in the least restrictive environment; [and] (j) failing to appropriately and

13  effectively monitor school district compliance with special education mandates and ensure timely

14  correction of noncompliance once identified."  (First Am. Compl. ¶ 121 (*New Jersey* case, No.

15  07-2978 (D.N.J.).)  The balance of the plaintiffs' complaint alleged violations against various

16  local districts and asserted other more factually specific allegations against the NJDOE.  (*Id.*)

17  The court directly confronted the question of whether provisions of the IDEA created individual

18  rights, and concluded that a private action "may generally challenge the NJDOE's compliance

19  with the IDEA, including any obligations imposed on the state in Section 1416."  563 F. Supp. 2d

20  at 490.

21        Additionally, in *Corey H. v. Board of Education of City of Chicago*, 995 F. Supp.

22  900, 903 (N.D. Ill. 1998), the plaintiffs based their suit on a failure of the Illinois State Board of

23  Education "to meet its statutory responsibility to ensure such compliance [by the LEAs with the

24  IDEA]."  The Illinois court also concluded that plaintiffs possessed a private right of action under

25  the IDEA.  *Id.* at 916–17.

26        This court concludes that the IDEA embodies a private right to enforce the IDEA's

27  obligations against the CDE.  Because the court finds a private right of action exists, defendant's

28  structural argument based upon the difficulties the CDE would face in complying with both

USDOE and court orders loses persuasive force.  Other courts also have also considered this

argument and rejected it, in part because the language of the IDEA clearly evinces Congress's

intent to permit individuals to use other federal statutes as vehicles to enforce the IDEA's

requirements.  *See Corey H.*, 995 F. Supp. at 916-17 (citing *Marie O. v. Edgar*, 131 F.3d 610, 615

(7th Cir. 1997)); *see also* 20 U.S.C. § 1415(l) ("Nothing in this chapter shall be construed to

restrict or limit the rights, procedures, and remedies available under the Constitution . . . or other

Federal laws protecting the rights of children with disabilities . . . .").  Moreover, an injunction

directed at an SEA does not conflict with USDOE oversight any more than an injunction directed

at an LEA conflicts with SEA oversight, and the latter situation is permitted by the text of section

1415 and established precedent.

        2.        Standing

        As organizations, plaintiffs must meet the requirements for standing laid out in

*Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1997).  An

association has representational standing when "(a) its members would otherwise have standing

to sue in their own right; (b) the interests it seeks to protect are germane to the organization's

purpose; and (c) neither the claim asserted nor the relief requested requires the participation of

individual members in the lawsuit."  *Id.*  Because the asserted purpose of the plaintiff associations

is to ensure and protect the legal rights of children who are IDEA beneficiaries, the interests the

instant action seeks to protect are germane, if not identical, to the associations' purpose.  (FAC

¶ 4.)  This satisfies the second requirement.  Further, because the suit does not pertain to

violations of any particular children's rights and seeks only equitable relief (FAC at 34–35), there

is no risk that the participation of individual members will be required in the lawsuit, and the third

requirement is met.  *Hunt*, 432 U.S. at 344.

        However, defendant objects that the individual members lack standing to bring the

current action, and therefore the first requirement cannot be satisfied.  (ECF 20 at 4.)  The court

understands defendant's objection to go properly to the existence of a private right of action, that

is statutory standing, and not to constitutional standing.  See *Hawaii Disability Rights Ctr. v.

Cheung*, 513 F. Supp. 2d 1185, 1191-93 (D. Haw. 2007) (distinguishing between constitutional

1    standing and statutory standing).  The elements of constitutional standing — injury in fact,

2    causation, and redressability, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) — are

3    met here.  Denial of FAPE to a child is also an injury to the parent.  *Winkelman ex rel. Winkelman*

4    *v. Parma City Sch. Dist.*, 550 U.S. 516, 526 (2007).  Consequently, the asserted denial of FAPE

5    constitutes injury in fact to members of the associations.  (FAC ¶ 4.)  Causation is satisfied

6    because defendant is subject to statutory monitoring, investigation and enforcement obligations,

7    and ultimately is responsible for ensuring the provision of FAPE.  (FAC ¶¶ 6, 15.)  Finally, the

8    injury is redressable because the abdication of responsibility is alleged to be ongoing, and the

9    injunctive relief requested could cause those children currently denied FAPE to be provided

10   FAPE in the future.  (FAC ¶ 4.)

11           The elements of standing are satisfied.

12           3.      Exhaustion of Administrative Remedies

13           Defendant notes that 20 U.S.C. § 1415(i)(1)(a) requires exhaustion of

14   administrative remedies, specifically a due process hearing and an appeal, prior to entry into

15   federal court.  (ECF 13-1 at 16-17 (citing *Payne v. Peninsula Sch. Dist.*, 653 F.3d 863 (9th Cir.

16   2011)).)  "'Exhaustion of the administrative process allows for the exercise of discretion and

17   educational expertise by state and local agencies, affords full exploration of technical educational

18   issues, furthers development of a complete factual record, and promotes judicial efficiency by

19   giving these agencies the first opportunity to correct shortcomings in their educational programs

20   for disabled children.'"  (*Id.* at 16 (quoting *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298,

21   1303 (9th Cir. 1992)).)  Defendant acknowledges that administrative remedies may be bypassed

22   in cases of systemic violations, but argues plaintiffs' framing of an individual issue as systemic is

23   insufficient.  (ECF 13-1 at 16–17 (citing *Doe v. Ariz. Dept. of Educ.*, 111 F.3d 678, 683 (9th Cir.

24   1997)).)

25           Plaintiffs contend that their claims have been mischaracterized, because they do

26   not seek remedies for individual students and consequently their claims are entirely systemic,

27   making exhaustion unnecessary. (ECF 14 at 17-18.)  Citing to *Hoeft*, 967 F.2d at 1303–1304,

28   1307, plaintiffs argue the Ninth Circuit has held exhaustion under the IDEA is not required in any

one of four circumstances: (1) where the administrative process is either futile or inadequate,
(2) where an agency has adopted a policy or practice contrary to law, (3) where the severity of
violations threaten basic statutory goals, and (4) where state policies are challenged.  (ECF 14 at
17-18.)  Plaintiffs assert their allegations in the First Amended Complaint satisfy all four of these
factors.  (*Id.* at 18.)

Exhaustion of administrative remedies is not necessary in the present case because
it would be futile and because the severity of the alleged violations threatens the IDEA's basic
statutory goals.  Due process hearing officers are not authorized to adjudicate questions of
statutory compliance.  *Porter v. Bd. of Trs. of Manhattan Beach Unified Sch. Dist.*, 307 F.3d
1064, 1074 (9th Cir. 2002) (citing *Hoeft*, 967 F.2d at 1307); *see also Christopher S. v. Stanislaus
Cnty. Office of Educ.*, 384 F.3d at 1211 (plaintiffs not required to exhaust IDEA administrative
remedies when challenging a school district's policy that shortened the school day for autistic
students).  Further, as plaintiffs are alleging the CRP process itself is broken as part of their
failure to investigate claim (FAC 74), they are not required to pursue this administrative remedy
either.  *See Hoeft*, 967 F.2d at 1304 (citing cases in which the due process procedures themselves
were challenged and concluding that exhaustion is not required when the challenged policies or
practices are enforced at the highest administrative level, such that the only meaningful remedy is
through the courts). Moreover, plaintiffs are alleging defendant's systemic state policies are
violating the IDEA by denying California students FAPE, which is a violation severe enough to
threaten the basic purpose of the IDEA.  *J.G. v. Bd. of Educ. of Rochester City Sch. Dist.*,
830 F.2d 444, 446-47 (2d Cir. 1987).

C.      Sufficiency of Factual Pleading

Defendant argues plaintiffs' claims are insufficiently pled for two reasons, and
additionally argues that injunctive and declaratory relief is unwarranted.  (ECF 13-1 at 7–15.)
First, defendant argues that the complaint is conclusory and fails to plead facts establishing
defendant violated the IDEA.  (*Id.* at 7–10.)  In its reply, defendant argues that certain exhibits
plaintiffs present render a violation of the IDEA implausible.  (ECF 15 at 5–8.)  At oral argument,
defendant expanded upon this point, noting that the size of the California school system assured

1   some IDEA disputes and violations were virtually certain, and arguing that the examples

2   presented therefore failed to imply systemic violations of the IDEA.  (ECF 20 at 9–10.)  Second,

3   defendant argues that the IDEA creates no direct responsibility to provide or implement FAPE

4   within the school districts, and therefore no facts can be alleged that would entitle plaintiffs to

5   relief.  (ECF 13-1 at 10–11.)

6        Plaintiffs respond that paragraphs 23 to 30 and 44 to 80 of the complaint contain

7   non-conclusory factual allegations that state a convincing claim for relief.  (ECF 14 at 9–11.)

8   Additionally, plaintiffs note they do not argue defendant itself should have provided FAPE

9   directly, only that defendant should have ensured FAPE by monitoring, investigating and

10  enforcing the IDEA.  (*Id.* at 11–13.)  Plaintiffs justify their requested relief by noting that a prayer

11  for injunctive relief is considered differently than a motion for a permanent injunction, and that if

12  their injunctive relief is stripped away they will have no remedy should they prevail on the merits.

13  (*Id.* at 14.)

14       The court concludes that plaintiffs have pled their claims and requested relief

15  sufficiently to satisfy the standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

16  Defendant's arguments focus on liability for particular denials of FAPE, and correctly observe

17  that the failure of an LEA is not necessarily the failure of an SEA.  (ECF 13-1 at 11.)  However,

18  the gravamen of plaintiffs' complaint is that defendant has failed generally to monitor, investigate

19  and enforce the IDEA.  (FAC ¶¶ 37–80.)  The violations alleged in Exhibit A of the First

20  Amended Complaint are intended as examples of systemic violations, and no individual remedy

21  for those violations is sought.  (ECF 14 at 18.)  Consequently, defendant's argument regarding the

22  placement of responsibility to provide FAPE is unavailing.

23       1.    First Cause of Action: Failure to Ensure the Provision of FAPE

24       The first cause of action is rooted in 20 U.S.C. § 1412(a)(11)(A), which mandates

25  that "[t]he State educational agency is responsible — for ensuring that  the requirements of this

26  subchapter are met."  (FAC ¶ 9.)  The first requirement imposed, in section 1412(a)(1)(A), is that

27  "[a] free appropriate public education [be] available to all children with disabilities."

28  Responsibility for the ultimate provision of FAPE unquestionably lies with defendant.  Plaintiffs

1  plead myriad facts in support of this claim.  For example, plaintiffs allege CDE does not have a

2  system in place to ensure the integrity and accuracy of the data on which a finding of

3  noncompliance rests.  (FAC ¶ 44.)  Thus, the Los Angeles Unified School District Monitor found

4  a discrepancy between the data entered by LEAs and the students' actual schedules: the former

5  showed substantially higher compliance levels regarding provision of FAPE than the latter.  (*Id.*)

6  This states a plausible claim for relief.

7          2.      Second Cause of Action: Failure to Monitor

8          The second cause of action is based on sections 1411(e)(2)(B) and 1416.  (FAC

9  ¶ 16.)  Section 1411(e)(2)(B) specifically requires that funds reserved by the SEA be used to

10 monitor, investigate complaints, and enforce the provisions of the IDEA.  These activities are

11 required, as the title of the subsection expressly indicates: "Required activities." The specific

12 requirement of monitoring is explained in more detail in section 1416.  Section 1416(a)(1)(C)

13 requires that SEAs monitor LEAs with a focus on improving educational results for all children

14 with disabilities and on meeting program requirements, 20 U.S.C. § 1416(a)(2)), by using

15 quantifiable indicators to determine whether FAPE is being provided in the least restrictive

16 environment and whether racial or ethnic groups are inappropriately identified as disabled, 20

17 U.S.C. § 1416(a)(3).  The IDEA therefore clearly lays out not simply a duty to monitor, but

18 explanations of how the monitoring must be done.

19         Plaintiffs allege that defendant fails to solicit data effectively from parents because

20 the surveys are sent through the schools and home with the children, resulting in fewer surveys

21 reaching the parents than if the surveys were mailed directly to the parents.  (FAC ¶ 45.)  Further,

22 the surveys are returned to the children's teachers, discouraging criticism of the teachers,

23 especially because the surveys must be signed.  (*Id.*)  Additionally, the plaintiffs charge that not

24 all the information collected is utilized by defendant.  (FAC ¶¶ 47–49.)  It may well be, as

25 defendant suggests, that this accusation is either incorrect or incompletely describes defendant's

26 actions.  (ECF 13-1 at 8.)  However, it is premature to consider the truth or merit of these claims

27 on a motion for dismissal.  These allegations state a plausible claim for relief.

28 /////

1          3.       Third Cause of Action: Failure to Investigate

2          The third cause of action also is based on sections 1411(e)(2)(B) and 1416, which

3   require that complaints be investigated.  (FAC ¶ 16.)  Plaintiffs allege that defendant ignores the

4   parents who present the complaints and instead simply accepts assurances from the LEA that the

5   complaints are baseless.  (FAC ¶ 73.)  Although the IDEA does not specify exactly what degree

6   of investigation is required for section 1415 complaints, something more than taking the LEAs at

7   their word is implied.  The extensive procedural safeguards otherwise detailed in section 1415

8   and the fact that funds are set aside for investigations in section 1411(e)(2)(B) suggest that

9   something greater than a perfunctory call to the LEA is expected.  These allegations also state a

10  plausible claim for relief.

11         4.       Fourth Cause of Action: Failure to Enforce

12         The fourth cause of action is also based on sections 1411(e)(2)(B) and 1416, which

13  require the SEA to enforce the IDEA.  (FAC ¶ 16.)  Plaintiffs allege that compliance is not

14  demanded sufficiently quickly and that defendant fails to adequately ensure compliance, for

15  example by warning the LEAs which student's records they will inspect prior to conducting

16  inspections and by not conducting "field" inspections.  (FAC ¶¶ 78–79.)  The court finds a

17  plausible claim based on these allegations.

18         5.       Fifth Cause of Action: Rehabilitation Act

19         To establish a prima facie violation of the Rehabilitation Act, 29 U.S.C. § 794

20  ("section 504"), plaintiffs must demonstrate: (1) that the students in question are disabled; (2) the

21  students are otherwise qualified to participate in an LEA's program; (3) the students have been

22  subjected to discrimination solely because of their disability; and (4) defendant receives federal

23  funding.  *Alex G. ex rel. Dr. Steven G. v. Bd. of Trs. of Davis Joint Unified Sch. Dist.*, 387 F.

24  Supp. 2d 1119, 1124 (E.D. Cal. 2005) (citing *Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 816

25  (9th Cir. 1999)).  When alleging violations of FAPE under section 504, plaintiffs are required to

26  go beyond the definition provided in the IDEA and demonstrate a violation of FAPE as defined in

27  34 C.F.R. § 104.33.  *Mark H. v. Lemahieu*, 513 F.3d 922, 933 (9th Cir. 2008).

28  /////

1            At oral argument, defendant raised the issue of whether section 504 was violated,

2    noting that the definitions of FAPE in section 504 and the IDEA are different.  (ECF 20 at 6.)

3    Additionally, defendant argues that the First Amended Complaint fails to allege element three,

4    and that as an additional fifth element, in the educational context, plaintiffs must demonstrate the

5    decisions relating to the students show either bad faith or gross misjudgment.  (ECF 13-1 at 18

6    (citing *Alex G.*, 387 F. Supp. 2d at 1124).)  Plaintiffs respond that element three is alleged in

7    paragraph 22 of the First Amended Complaint, and element five is alleged in paragraphs 32

8    through 36.  (ECF 14 at 13.)  Further, plaintiffs state that the facts alleged in these paragraphs are

9    covered in greater detail in the attached exhibits describing mistreatment of students.  (*Id.*)

10   Defendant's reply brief notes that the instances described suggest no discrimination, bad faith or

11   gross misjudgment on the part of the LEAs.  (ECF 15 at 8–9.)  Plaintiff responds that defendant

12   and the LEAs cannot be distinguished because of defendant's monitoring, investigative and

13   enforcement obligations.  (ECF 20 at 7-8.)

14           Plaintiffs have adequately pled a section 504 violation.  As a threshold matter, the

15   court finds plaintiffs have sufficiently alleged a violation of FAPE as defined under section 504.

16   *Mark H.*, 513 F.3d at 933.  Allegations that students are not being educated in the least restrictive

17   environment support a claim of violation of FAPE under section 504.  *See* 34 C.F.R.

18   §§ 104.33(b)(1), 104.34(a) (stating disabled individuals must be educated in the least restrictive

19   environment).  The First Amended Complaint alleges at length that this requirement is not

20   satisfied, beginning at paragraph 22 and including Exhibit A.  Turning to the first element, it is

21   clear that every child contemplated as covered in the current action is disabled, because the First

22   Amended Complaint contemplates harm only to disabled children.  The second element also is

23   met because the affected children are all IDEA beneficiaries.  Regarding the third element,

24   plaintiffs allege at paragraphs 22 and 23 in the First Amended Complaint that disabled students

25   are victims of discrimination, and as a result of insufficient training and the challenges presented

26   by disabled students, they are frequently educated in a more restrictive environment than

27   necessary.  If true, this would mean that the relevant regulations were violated solely as a result of

28   the students' disabilities.  Lastly, defendant indisputably receives federal funding.

Since the decision in *Alex G.* in 2005, the Ninth Circuit has clarified the correct *mens rea* component of a Rehabilitation Act violation as intentional discrimination or deliberate indifference. *Mark H.*, 513 F.3d at 938. In paragraphs 78 to 80 of the First Amended Complaint, plaintiffs allege that defendant has chosen not to enforce the IDEA, which reasonably may be assumed to include enforcement of the least restrictive environment provisions, when it becomes aware of violations. If true, this would tend to suggest deliberate indifference, thereby satisfying the fifth element. Plaintiffs have stated a plausible claim for violation of section 504.

6.      Sixth Cause of Action: California Education Code

The factual allegations reviewed above also demonstrate that plaintiffs have stated a plausible claim of violation of California Education Code § 56000, *et seq.*, and the regulations promulgated under those sections, 5 Cal. Code Regs. § 3000, *et seq.*, which impose upon the CDE many of the same duties as the IDEA. *See, e.g.*, Cal. Educ. Code 56100(b) (requiring the State Board of Education, the governing body of the CDE, to monitor LEA plans to ensure FAPE).

7.      Declaratory Relief

Defendant argues that plaintiffs do not meet the requirements to receive declaratory and injunctive relief because, among other things, this relief would contradict public policy by interfering with the USDOE's enforcement role. (ECF 13-1 at 12–15.) Because plaintiffs have standing and a private right of action, as discussed above, and because all causes of action state plausible claims, this suit presents a valid case or controversy, permitting declaratory relief.

D.      Request for a More Definite Statement

Federal Rule of Civil Procedure 12(e) permits a party to move for a more definite statement when a pleading is "so vague or ambiguous that the party cannot reasonably prepare a response." Defendant argues this is the case here, as the First Amended Complaint "meanders through various topics" and "is essentially set out in a prose format akin to an essay." (ECF 13-1 at 1, 15.) As defendant itself notes, a more definite statement is appropriate only "if the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted." (ECF 13-1 at 15 (citing *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183,

19

1188 (E.D. Cal. 2010)).)  The court has already determined that plaintiffs have pled the elements

necessary to state their causes of action plausibly.  The First Amended Complaint serves the

essential purpose of giving defendant notice of the claims being asserted.

V.      CONCLUSION

            For the foregoing reasons, defendant's motions are DENIED.

            IT IS SO ORDERED.

DATED:  March 29, 2013.

_____
UNITED STATES DISTRICT JUDGE