1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   MORGAN HILL CONCERNED                 No. 2:11-cv-03471-KJM-AC
     PARENTS ASSOCIATION, an
12   unincorporated association, and
     CONCERNED PARENTS
13   ASSOCIATION, an unincorporated         ORDER
     association,
14
                    Plaintiffs,
15
          v.
16
     CALIFORNIA DEPARTMENT OF
17   EDUCATION and DOES 1 through 5,

18                  Defendants.

19

20          On May 15, 2015, the court issued an order directing the parties to file

21   simultaneous briefs on the question of compensation for the proposed special master by June 5,

22   2015.  (ECF No. 103 at 2.)  In the same order, the court also directed the parties to file focused

23   simultaneous briefs on the question of individual notice to and consent by affected students

24   regarding the potential release of personally identifiable information.  (*Id.*)  The parties have filed

25   their briefs.  (ECF Nos. 107–09.)

26          The court held a status conference on June 30, 2015, at which Rony Sagy and

27   Barbara Gately appeared for plaintiffs, Grant Lien appeared for defendant, and proposed special

28   master Winston Krone of Kivu Consulting Inc. appeared telephonically.  The court below

                                            1

1   addresses certain issues raised in the parties' briefs and appoints Mr. Krone as a special master in

2   this case with the limited role of assisting the parties in developing an electronic discovery

3   protocol.

4   I.      SPECIAL MASTER'S APPOINTMENT

5           Having reviewed Mr. Winston Krone's proposed protocol and having discussed it

6   with the parties, the court hereby APPOINTS Mr. Krone of Kivu Consulting, Inc. as the special

7   master in this case for the limited purpose of facilitating the parties' development of an electronic

8   discovery protocol.  Under Federal Rule of Civil Procedure 53(b)(2), the court hereby directs

9   the special master to proceed with all reasonable diligence in performing his duties.

10          The court approves Mr. Krone's proposed protocol, attached as Exhibit A, in its

11  entirety.  The court reiterates that it is not delegating to the special master any legal decision-

12  making authority with respect to relevance, notice, or otherwise.

13          Mr. Krone will schedule his first meeting with the parties for the first week of

14  August 2015.  Mr. Krone, or the parties themselves, will submit to the court a jointly agreed

15  proposed protocol no later than September 11, 2015.  Once the court approves the protocol,

16  discovery may resume in full.

17  II.     SPECIAL MASTER'S COMPENSATION

18          Defendant argues the special master's fees should be split evenly between the

19  parties or, in the alternative, plaintiffs should bear a greater share of the fees "because their

20  overbroad discovery is a primary reason for the appointment of the special master."  (ECF No.

21  108 at 1–2.)  Plaintiffs claim defendant must "assume full responsibility for the master's fees and

22  costs"; otherwise, due to hardship, plaintiffs "would be pressed to move for the appointment of a

23  magistrate [judge] as special master . . . ."  (ECF No. 107 at 1–2.)

24          Federal Rule of Civil Procedure 53(g) provides as follows:

25          **(1) *Fixing Compensation.*** Before or after judgment, the court
               must fix the master's compensation on the basis and terms

26             stated in the appointing order, but the court may set a new
               basis and terms after giving notice and an opportunity to be

27             heard.

28

2

1     **(2)** *Payment.*  The compensation must be paid either:

2          **(A)** by a party or parties; or

3          **(B)** from a fund or subject matter of the action within the
           court's control.

4
5     **(3)** *Allocating Payment.*  The court must allocate payment among
      the parties after considering the nature and amount of the
      controversy, the parties' means, and the extent to which any party is
6     more responsible than other parties for the reference to a master.
      An interim allocation may be amended to reflect a decision on the
7     merits.

8     Fed. R. Civ. P. 53 (emphasis in original)

9          While they have no force of law, the 2003 amendments to the advisory committee

10    notes provide a useful guide in ascertaining the meaning of the rule:

11         The amount in controversy and the means of the parties may
           provide some guidance in making the allocation.  The nature of the
12         dispute also may be important—parties pursuing matters of public
           interest, for example, may deserve special protection.  A party
13         whose unreasonable behavior has occasioned the need to appoint a
           master, on the other hand, may properly be charged all or a major
14         portion of the master's fees.  It may be proper to revise an interim
           allocation after decision on the merits.  The revision need not await
15         a decision that is final for purposes of appeal, but may be made to
           reflect disposition of a substantial portion of the case.

16
           The basis and terms for fixing compensation should be stated in the
17         order of appointment.  The court retains power to alter the initial
           basis and terms, after notice and an opportunity to be heard, but
18         should protect the parties against unfair surprise.

19    Fed. R. Civ. P. 53 advisory committee's notes; *United States v. Petri*, 731 F.3d 833, 839 (9th Cir.

20    2013); *Clark v. Long*, 255 F.3d 555, 559 (8th Cir. 2001).

21         In sum, in allocating payment of the master's compensation the court is guided by

22    considering the nature and amount of the controversy, the parties' means, and the extent to which

23    any party is more responsible than others for the reference to a master.  For example, parties

24    pursuing matters of public interest may deserve special protection, but a party whose

25    unreasonable behavior has occasioned the need to appoint a master may properly be charged all

26    or a major portion of the master's fees.  An interim allocation may be amended to reflect a

27    decision on the merits.  The revision need not await a decision that is final for purposes of appeal

28    but may be made to reflect disposition of a substantial portion of the case.

3

1      District courts have "broad discretion to determine which of the parties to charge,

2   and the district court's decision will not be disturbed absent an abuse of that discretion." *Apponi*

3   *v. Sunshine Biscuits, Inc.*, 809 F.2d 1210, 1220 (6th Cir. 1987); *see also Roy v. Cnty. of*

4   *Lexington, S. Carolina*, 141 F.3d 533, 549 (4th Cir. 1998) ("Although courts have construed a

5   special master's fees as 'costs' under the Federal Rules of Civil Procedure, the apportionment of a

6   special master's fees has always remained squarely within the trial court's discretion." (internal

7   citation and quotation marks omitted)); *Aird v. Ford Motor Co.*, 86 F.3d 216, 221 (D.C. Cir.

8   1996) (noting "the district court enjoys broad discretion to allocate the master's fees as it thinks

9   best under the circumstances of the case").

10      Here, the court finds defendant should bear the responsibility for special master's

11  fees at this stage of the case.[1]  First, it cannot be disputed that plaintiffs are nonprofit associations

12  that pursue a matter of public interest: a free appropriate public education on behalf of their

13  members' children with disabilities.  Second, plaintiffs' counsel represents they "are comparably

14  restrained in their ability to finance the services of a special master as they are presently receiving

15  no compensation for their time or reimbursement of costs."  (ECF No. 107 at 1.)  Finally, as of

16  the date of this order, the record is not yet developed enough to allow the court to determine if

17  one side is more  responsible for the special master referral.  Because the first two factors weigh

18  in favor of allocating the responsibility of paying special master's fees to defendant and because

19  the third factor is neutral, the court finds special master's fees should be allocated to defendant.

20  *See Reed v. Cleveland Bd. of Ed.*, 607 F.2d 737, 743 (6th Cir. 1979); *Fund for Accurate &*

21  *Informed Representation, Inc. v. Weprin*, No. 92-0593, 1992 WL 512410, at *5 (N.D.N.Y. Dec.

22  23, 1992).

23      However, this is an interim allocation, subject to future modification if warranted.

24  For example, if defendant prevails in this matter, it may arguably recover special master fees as

25  costs.  At the conclusion of this litigation, defendant may also ask the court to make a different

26  _____

27      [1]  This finding is limited to the issue of the special master's compensation and does not
    mean that defendant shall always bear responsibility for costs in this case.  At the June 30, 2015
    conference, plaintiffs acknowledged that the court's decision is not setting any precedent as to

28  payment of costs.

1   allocation, under all the circumstances existing at that time.  *See Loblaw Companies Ltd. v. Azimi*,

2   No. 00-3591, 2001 WL 36028015, at *2 n.3 (N.D. Cal. June 8, 2001) (quoting *Aird*, 86 F.3d at

3   220–22).

4           In a separate order, the court will provide instructions on the method by which

5   payment of the special master will be made.

6   III.    NOTICE UNDER THE FAMILY EDUCATION RIGHTS AND PRIVACY ACT OF
        1974 (FERPA)

7

8           Defendant argues this court's tentative interpretation of FERPA to allow notice by

9   publication "contravenes the United States Department of Education's (USDOE) position that

10  individual notice by mails is required."[2]  (ECF No. 104 at 2.)  Defendant reasons this court should

11  require notice by mail because "USDOE's interpretation of FERPA merits deference . . . ." (*Id.*)

12  Plaintiffs respond notice by publication is sufficient in light of the number of students implicated,

13  which they estimate exceeds 1 million.  (ECF No. 105 at 1–8.)  The court hereby confirms its

14  tentative interpretation, addressing defendant's primary objection below.  To the extent the court

15  does not address a party's argument, the argument raises an issue that can be resolved by the

16  magistrate judge in response to a properly framed discovery dispute after full discovery resumes.

17          As the court previously has noted, Congress enacted FERPA to protect the privacy

18  of students and their parents.  *See*20 U.S.C. § 1232g; *United States v. Miami Univ.*, 294 F.3d 797,

19  806 (6th Cir. 2002); *Cherry v.Clark Cnty. Sch. Dist.*, No. 11-01783, 2012 WL 4361101, at *5 (D.

20  Nev. Sept. 21, 2012); *Rios v. Read*, 73 F.R.D. 589, 597–99 (E.D.N.Y. 1977); *Mattie T. v.

21  Johnston*, 74 F.R.D. 498, 501 (N.D. Miss. 1976).  FERPA conditions the receipt of federal

22  funding by educational institutions or agencies on their compliance with certain procedures

23

24          [2]  Defendant asks that this court take judicial notice of four documents: (1) a letter of
    technical assistance (Opton letter) from the DOE's Family Policy Compliance Office (FPCO) to
25  the Regents of the University of California; (2) portions of a 2011 training presentation on
    FERPA by the FPCO; (3) portions of a 2012 FERPA presentation for elementary/secondary
26  school officials by the FPCO; and (4) information on California Concerned Parents Membership
    from its website.  (ECF No. 104-1, Exs. A–D.)  Plaintiffs do not oppose defendant's request.  The
27  court takes judicial notice of the Opton letter because it is a matter of public record.  The court
    does not take judicial notice of the remaining materials, however, because they do not satisfy the
28  requirements of Federal Rule of Evidence 201.

concerning the keeping of educational records.  *See* 20 U.S.C. § 1232g; *Miami Univ.*, 294 F.3d at

806.  These procedures are designed, among other things, to restrict access to students'

educational records by third parties without parents' consent.  20 U.S.C. § 1232g(b)(2).  If,

however, the students in question are eighteen years of age or older, the consent required under

FERPA is required of the students, rather than the parents.  *Id.* § 1232g(d).

          The consent requirement is subject to several exceptions. The most relevant

exception to this action allows for disclosure without consent if disclosure is to comply with a

judicial order or subpoena and the educational institution has made a reasonable effort at

notification.  34 C.F.R. § 99.31(a)(9).  Reasonable efforts to notify must be made in advance of

compliance, "so that the parent or eligible student may seek protective action . . . ." *Id.*

§ 99.31(a)(9)(ii).  Confidential information may be disclosed if the notification requirements are

met and there is a protective order in place restricting disclosure.  *See*, *e.g.*, *Morton v. Bossier

Parish Sch. Bd.*, No. 12-1218, 2014 WL 1814213, at *4 (W.D. La. May 6, 2014); *C.T. v. Liberal

Sch. Dist*, No. 06-2093, 2008 WL 394217, at *4 (D. Kan. Feb. 11, 2008); *see also Rios*, 73 F.R.D.

at 602 (noting "the need for a protective procedure when disclosure to a private party is directed

by court order, it would seem sensible to require in the disclosure order that the recipients of the

student records avoid revealing the data to individuals unconnected with the litigation and destroy

the data when it is no longer needed.  But it is neither required nor necessary that the defendants

redact the names of the students from the records and substitute neutral identifying information").

          The appropriate type of notice depends on the circumstances of each case.  *Rios*,

73 F.R.D. at 600.  For instance, "where exceptionally large numbers of students are involved, it

may be enough for a school or school district to publish notice in a newspaper."  *Id.*  In *Rios*,

where the case "involve[ed] several hundred students," the court found "appropriate notice could

be effected either by publication or by mail."  *Id.*  Here, the court understands that a very large

number of student records are affected by plaintiffs' discovery requests.  (*See* ECF No. 67.)

Notice by publication appears to be the only practical method of complying with the statute and

regulations, while allowing the case to move forward on a reasonable timetable.

1     The court finds that the educational records at issue here may be disclosed without

2     running afoul of FERPA as long as parents or students are notified of the disclosure by

3     publication and a protective order restricts the use of the information to this litigation only.  *See*

4     *Liberal Sch. Dist*, 2008 WL 394217, at *4; *see also Moeck v. Pleasant Valley Sch. Dist.*, No. 13-

5     1305, 2014 WL 4988274, at *2 (M.D. Pa. Oct. 7, 2014); *Doe v. Ohio*, No. 91-0464, 2013 WL

6     2145594, at *9 (S.D. Ohio May 15, 2013); *Blunt v. Lower Merion Sch. Dist.*, No. 07-3100, 2009

7     WL 1259100, at *2 (E.D. Pa. May 7, 2009).  Here, there is a protective order in place governing

8     the disclosure of confidential information.  (ECF No. 60.)  That order is adequate to ensure the

9     information disclosed is not disseminated to others.  The court's ruling, however, is without

10    prejudice; it can be revisited if the facts of the case change significantly.

11    The court finds unpersuasive defendant's argument that this court should defer to

12    the DOE's FPCO opinion letter.  *See* note 2 *supra*.  That letter notes, "This Office has

13    consistently interpreted FERPA to require that students be notified in advance of the compliance

14    with a court order or subpoena by individual notice.  Notice on campus bulletin boards or in

15    campus newspapers would not be adequate to meet this requirement."  (ECF No. 104-1, Ex. A at

16    2.)  The FPCO letter has no force of law; it has only persuasive force and then only to the extent it

17    has "the power to persuade."  *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000)

18    ("Interpretations such as those in opinion letters—like interpretations contained in policy

19    statements, agency manuals, and enforcement guidelines, all . . . lack the force of law . . .")

20    (internal quotation marks omitted).  Defendant conceded at hearing that the letter is not entitled to

21    deference under *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 849

22    (1984).  *See Ohio*, 2013 WL 2145594, at *7.  For the reasons set forth above, this court finds the

23    letter's interpretation unpersuasive.

24    IV.  FURTHER STATUS

25    A further status conference is set for **October 15, 2015** at **2:30 p.m.**, for the

26    purpose of scheduling the balance of the case.

27    /////

28    /////

1          The Clerk of Court is directed to serve a copy of this order on Special Master

2     Winston Krone at the address shown on the attached Exhibit A.

3          IT IS SO ORDERED.

4     DATED:  July 2, 2015.

5

6     _____

7     UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8