1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MORGAN HILL CONCERNED                    No.  2:11-cv-3471 KJM AC
     PARENTS ASSOCIATION, et al.,
12
                     Plaintiffs,
13                                            ORDER
            v.
14
     CALIFORNIA DEPARTMENT OF
15   EDUCATION, et al.,

16                   Defendants.

17

18          Plaintiffs – two associations of parents of children with disabilities – allege that defendant

19   is violating the Individuals with Disabilities Education Improvement Act, 20 U.S.C. §§ 1400, et

20   seq., through its systemic failure to provide a "free appropriate public education" ("FAPE") to

21   children with disabilities.  Pending before the undersigned are (1) defendant's motion for a

22   protective order (ECF No. 195), (2) defendant's motion to compel (ECF No. 196), and

23   (3) plaintiffs' motion for $943,548.78 in sanctions (ECF No. 206).[1]  These motions were referred

24   _____

25   [1]  Plaintiffs also move to strike defendant's opposition to the motion for sanctions, and they "seek
     an order of the Court depriving Defendant's counsel of the right to be heard consistent with Local
     Rule 230(c)."  ECF No. 216.  That motion will be denied, as defendant reasonably filed its papers
26   in conformance with E.D. Cal. R. ("Local Rule") 251, rather than Local Rule 230.  Plaintiffs seek
     discovery sanctions under Fed. R. Civ. P. 26 and 37, and such motions are governed by the Local
27   Rule governing discovery disputes and sanctions.  See Local Rule 251.  Plaintiffs argue that they
     are also seeking sanctions under Rule 16 and the court's inherent powers, and that the *entire*
28   (continued…)

                                                      1

to the undersigned by E.D. Cal. R. ("Local Rule") 302(c)(1) and ECF No. 205.

For the reasons set forth below, (1) plaintiffs' motion for sanctions will be granted under Fed. R. Civ. P. 37(a)(5)(C) only, in the reduced amount of $77,814.48, (2) defendant's motion for a protective order will be denied, and (3) defendant's motion to compel will be granted in part and denied in part.

## I.   DEFENDANT'S MOTION FOR PROTECTIVE ORDER

"Defendant requests that the Magistrate resolve: (1) whether Plaintiffs Morgan Hill Concerned Parents Association and Concerned Parents Association should be prohibited from seeking discovery concerning the children of non-members; (2) whether Plaintiffs should be barred from seeking the personally identifiable information (PII) of non-members' children; and (3) whether Plaintiffs should be required to pay for the CDE's future expenses for responding to Discovery."  ECF No. 218 (Joint Statement) at 2.

A.   Non-compliance with the Local Rules

Defendant's motion is fatally defective in that defendant failed to comply with the applicable rules governing such motions.  The violations discussed here are fundamental to the smooth functioning of the discovery motion process, and defendant's failure to comply imposes unacceptable burdens on the court.

1.   Discovery not identified and reproduced

Defendant has not identified what discovery it seeks protection from.  Instead, defendant asks the court to address the theoretical questions of whether plaintiffs should be "prohibited" or

---

motion is therefore governed by Local Rule 230.  However, plaintiffs offer no authority or explanation for why a motion seeking discovery sanctions should not be governed by the Local Rule governing "Motions Dealing with Discovery Matters," even if plaintiff asserts that defendant's alleged discovery violations also involved Rule 16 and the court's inherent powers. In any event, the motion is frivolous, because no reasonable attorneys would ask the court to impose a million dollars in discovery sanctions against a party, while depriving that party of the ability to defend itself, solely on the basis that the defending party arguably filed papers under the wrong Local Rule.  If plaintiffs' counsel believed, as they argue, that the motion was governed by Local Rule 230, and that they were therefore entitled to have more time to file a Reply brief, any reasonable attorneys would have simply moved for more time, rather than filing a motion to deprive defendant of the opportunity to be heard on the motion.  Plaintiffs' counsel thus compelled the court to write, however briefly, and to expend scarce judicial resources, on a motion that counsel must have known would not be granted.

2

1    "barred" from seeking PII.  However, a motion for a protective order is not a theoretical exercise

2    in determining whether certain types of discovery should be allowed.  Rather, it permits a person

3    "from whom discovery is sought" to seek a protective order forbidding the discovery, or ordering

4    some other relief.  See Fed. R. Civ. P. ("Rule") 26(c)(1).  To seek such an order in this court,

5    "[e]ach specific interrogatory, deposition question or other item objected to, or concerning which

6    a protective order is sought, and the objection thereto, shall be reproduced in full" in the Joint

7    Statement.  Local Rule 251(c).

8            In this motion, defendant has not identified a single interrogatory or document request, nor

9    a single objection that it has made to the discovery.  The court could overlook this omission, and

10   look through all the discovery plaintiffs have propounded in this case (to the extent they are

11   disclosed in other, properly made discovery motions).  However, it is not the role of the court to

12   play "Where's Waldo?" in an attempt to find the discovery requests that are at issue here.

13   Defendant is not required to repeat every discovery request when its protective order is "unrelated

14   to specific, individual items."  Local Rule 251(c).  However, this does not excuse defendant from

15   identifying _any_ discovery items, when some of the items requested include PII, and others do not.

16   Defendant must identify what discovery it objects to, identify what objections it has made, and

17   only then, move for a protective order.  Since defendant has not done this, the motion for

18   protective order, including the request for fees for future document productions, will be denied in

19   its entirety.

20                    2. Failure to meet and confer

21           Defendant asserts that it "met and conferred by phone," when its counsel told plaintiff's

22   counsel about the motion to be filed, and plaintiffs' counsel failed to give in.  ECF No. 218 at 3

23   ¶ II(A).[2]  Plaintiffs confirm that the "meet and confer" consisted of "a two-minute" phone call in

24   which defendant's counsel simply demanded that plaintiffs give in to the motion defendant was

25   about to file.  Id. ¶ II(B).

---

26   [2] "Plaintiffs' counsel refused to refrain from seeking the PII of non-members' children, limit
27   discovery to its members' children, or pay half of Defendant's future discovery expenses, thus
     necessitating this motion."  Lien PO Decl. ¶ 2.

28

1   That is not what is meant by "meet and confer."  To satisfy the "meet and confer"

2   requirement, the parties must have conferred and actually attempted to resolve their differences.

3   Fed. R. Civ. P. 26(c)(1) (motion for protective order must include a certification that "the movant

4   has in good faith conferred … *in an effort to resolve the dispute without court action*") (emphasis

5   added); Local Rule 251(b) (parties must have "conferred and attempted to resolve their

6   differences"); Standard Information for Judge Claire at 2 (parties must meet and confer "in an

7   attempt to resolve the dispute").[3]  Counsel's simply stating that they are going to file a motion,

8   and demanding that the opposing party do what the motion requests, is not an attempt to resolve

9   the dispute short of court action.

10   If defendant chooses to renew this motion, it must show that it made a good faith attempt

11   to resolve the matter prior to bringing the matter to court.  Defendant is cautioned that the "meet

12   and confer" requirement is a substantive prerequisite for filing a discovery motion.  It is not

13   simply a couple of sentences to be inserted in a Joint Statement and declaration.  A discovery

14   motion is a last resort, to be used only if a discovery dispute cannot be resolved by the parties

15   themselves.  Even when such a motion must be brought to court, the parties must have done

16   everything they reasonably can to reduce the number and scope of issues that the court must

17   resolve.  Defendant has presented no evidence that this was done here.

18   B.  Renewal of the Motion in Proper Form

19   Normally, the court would deny the motion and state that the denial is without prejudice to

20   its renewal in proper form.  In this case, however, certain portions of the motion appear to be

21   entirely without merit, and so the court is reluctant to invite defendant to file a motion that will

22   only result in further award of attorneys' fees to plaintiffs, and possibly other sanctions against

23   defendant.

24   1.  Discovery regarding non-members' children

25   Defendant argues that it should not be required to produce discovery regarding non-

26   members' children.  However, this appears to be re-arguing the motion defendant has already lost,

---

[3]  www.caed.uscourts.gov/caednew/assets/File/Judge%20Claire%20Standard%20Information(1).pdf

1    when the court ruled that plaintiffs would not be prohibited from seeking this discovery.  See ECF

2    No. 150 (order partially granting plaintiffs' motion to compel).  In that motion, defendant

3    objected that "plaintiffs will not narrow the 'scope' of their requests to those children and school

4    districts, and instead are improperly insisting on getting documents 'related to 1,022 school

5    districts and over six million children in the State of California over a period of eight years and

6    continuing until this litigation ends.'"  Id. at 6.  The court overruled that objection, and instructed

7    defendant not to renew it here, since it could only be made to the presiding district judge.  Id. at 7.

8          The court is aware that defendant argues that this is a different objection.  See ECF

9    No. 218 at 4-8.  However, it appears to be a new argument for the same objection.  Defendant has

10   not made a motion for reconsideration, and even if it had, reconsideration is not normally granted

11   where the party is now making the arguments it could have made earlier, but failed to.  See, e.g.,

12   United States v. Westlands Water Dist., 134 F. Supp. 2d 1111, 1131 (E.D. Cal. 2001) (Wanger,

13   J.) ("[a] motion for reconsideration is not a vehicle to reargue the motion or to present evidence

14   which should have been raised before") (internal quotation marks omitted).

15                 2.  Personally identifiable information ("PII") of non-members' children

16         Defendant seeks a protective order preventing the production of the PII of non-members'

17   children, because it "is irrelevant, overbroad, unduly burdensome and would violate their right to

18   privacy."  ECF No. 218 at 11.  However, this argument assumes that plaintiffs have asked

19   separately for PII.  As far as the court can discern (from other, properly structured, discovery

20   motions), plaintiffs have not done so.  Rather, plaintiffs have requested – and been granted –

21   discovery of certain documents, some of which may contain PII.  See ECF No. 150.  The question

22   of what to do about the PII, if contained in a document the court has already determined must be

23   produced, has already been resolved by the court.  See, e.g., ECF No. 116 at 7 ("the educational

24   records at issue here may be disclosed without running afoul of FERPA as long as parents or

25   students are notified of the disclosure by publication and a protective order restricts the use of the

26   information to this litigation only").

27         Defendant also argues that plaintiffs have "admitted" that they do not want PII.  See ECF

28   No. 218 at 12-13.  In support, defendant cites newspaper articles that supposedly contain such

1   admissions from members of the plaintiff associations.  Id.  Defendant offers no basis for the

2   court to consider newspaper articles in this motion.  It makes no showing that the purported

3   excerpts of interviews contained in the newspaper articles support the spin defendant puts on

4   them, that they reflect the actual views of the plaintiffs, that they were adopted by the plaintiffs,

5   or that they are in any way worthy of consideration by the court.  Indeed defendant does not even

6   authenticate the newspaper articles, instead simply appending them, altered with underlining and

7   asterisks, as exhibits to an attorney's declaration.  See Protective Order Declaration of Grant Lien

8   ("Lien PO Decl.") (ECF No. 218-1) ¶¶ 3-6.

9        Moreover, defendant's claim that plaintiffs have admitted in court that they do not need

10  this information appears to be blatantly misleading.  See ECF No. 218 at 13.  Defendant appears

11  to be converting plaintiffs' attempts to obtain information while protecting student identities – by,

12  for example, proposing alternatives such as "assign[ing] pseudonyms" – into an "admission" that

13  plaintiffs do not need the identifying information even if defendant refuses to cooperate in the

14  effort to find some other way of getting the information to plaintiffs.  See ECF No. 225 at 15.

15       The court does not rule definitively on the merits of the above matters, however, since

16  defendant has – in plain violation of the Local Rules – failed to identify any particular documents

17  or interrogatories that this motion applies to, and failed to meet and confer.

18       C.  Attorney's Fees

19       Because defendant's motion will be denied in its entirety, the court must award attorneys'

20  fees to plaintiffs.  Fed. R. Civ. P. 26(c)(3) (regarding a motion for protective order, "Rule 37(a)(5)

21  applies to the award of expenses"), 37(a)(5)(A) (the court "must" award attorney's fees after

22  giving the losing side an opportunity to be heard).[4]  Plaintiffs seek fees of $10,425.00 for past

23  work at the rate of $695 per hour for 15 hours.  They also anticipate fees of $7,500 for the hearing

24  on this motion.  Protective Order Declaration of Rony Sagy ("Sagy PO Decl.") (ECF No. 222)

25  ¶ 2.

26  ////

27

28

---

[4]  The undersigned does not find that any of the exceptions apply.

6

1    Defendant does not challenge these fees – not for lack of specificity,[5] not for using an

2    inappropriate rate,[6] nor on any other grounds.  Accordingly, plaintiffs will be awarded the

3    requested fees in the amount of $10,425.00.  Plaintiffs may separately move for fees for this

4    motion, if they choose.

5                              II. DEFENDANT'S MOTION TO COMPEL

6          A.  Interrogatories – Set One

7          Defendant moves to compel answers to four interrogatories.  They seek (1) the identities

8    of all children whose parents are members of the plaintiff associations, and the parents' identities,

9    (2) all the facts that support the contention that those children were harmed, (3) witnesses who

10   can support those claims of harm, and (4) identification of documents supporting those claims of

11   harm.  ECF No. 219 at 7-16.  Plaintiffs objected to each:

12              on the grounds that it seeks information that is protected from
                disclosure by [Plaintiffs'] First Amendment and privacy rights.
13              [Plaintiffs] further object to this interrogatory on the basis of
                relevance.
14

15   ECF No. 219 at 7-16.

16         Defendant argues that it needs this information to assess plaintiffs' claims of harm.  It

17   cites Arc of California v. DDS, 2:11-cv-2545, ECF No. 144 (E.D. Cal. June 19, 2014) (Delaney,

18   M.J.), for the proposition that associations may not "hide their membership during discovery."

19   ECF No. 219 at 8.[7]

20         Plaintiffs argue that they may withhold the requested information under the authority of

21   NAACP v. Alabama, 357 U.S. 449 (1958).  They also argue that the presiding district judge has

22   already ruled that discovery on individual students is off-limits.

23   _____

24   [5]  Plaintiffs have submitted no documentation, such as time sheets or billing statements, in
     support of the fee amount.
25   [6]  Plaintiffs' counsel are San Francisco counsel, and presumably are using San Francisco rates, as
     they do in the separate Motion for Sanctions.
26   [7]  The Arc decision simply orders production.  It does not, as defendant claims, "recognize that
     the individual members of the associations were the claimants, they needed to show harm to
27   themselves to prevail, and their privacy objections lacked merit," and it certainly did not state that
     it was adopting "the reasons discussed below" by defendant.
28

1          1. The plaintiffs

2          Plaintiffs are two "associations of concerned parents ["Concerned Parents"] of California

3   children with disabilities."  First Amended Complaint ("Complaint") (ECF No. 6) at 1.

4   "Members of Concerned Parents are parents of children with disabilities who are either being

5   presently, or were previously, denied FAPE in the State of California."  Complaint at 5 ¶ 4.

6          In their complaint, plaintiffs have included "the educational histories of numerous [that is,

7   seventeen (17)] school children with disabilities from across the State of California who are

8   being, or have been, denied FAPE and are the consequent victims of discrimination."  Complaint

9   at 8 ¶ 22.  The Complaint incorporates Exhibit A, which contains the alleged histories of those 17

10  school children.  Plaintiffs allege that their histories "are reflective of the experiences of far too

11  many of the children in California's special educational population."  Id.

12          2. First Amendment & privacy rights

13         In NAACP v. Alabama, the NAACP refused to comply with Alabama's law requiring it,

14  as a foreign association, to register with the state.  357 U.S. 449 (1958).  Alabama sued to prevent

15  the NAACP from carrying out any activities in the state since it wasn't registered, and obtained a

16  restraining order.  Before a hearing on the NAACP's motion to dissolve the restraining order,

17  Alabama demanded production of, among other things, the NAACP's membership lists (that is,

18  the "rank and file" members, not just the officers), which it said it needed to defend the

19  restraining order.  The court ordered the production, and held the NAACP in contempt when it

20  refused to produce.

21         The Supreme Court first discussed the value of group association, and noted that "freedom

22  to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the

23  'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces

24  freedom of speech."  NAACP, 357 U.S. at 460.  The Court noted "the vital relationship between

25  freedom to associate and privacy in one's associations," and affirmed that "compelled disclosure

26  of affiliation with groups engaged in advocacy" could be an effective restraint on that liberty, and

27  particularly so "where a group espouses dissident beliefs."  Id. at 462.

28         In the facts of that case, the Court found that compelled disclosure of the NAACP

membership lists "must be regarded as entailing the likelihood of a substantial restraint upon the

exercise by petitioner's members of their right to freedom of association."  Id.  In fact, the Court

found that the NAACP had made a sufficient *factual* showing in this regard:

> Petitioner has made an uncontroverted showing that on past
> occasions revelation of the identity of its rank-and-file members has
> exposed these members to economic reprisal, loss of employment,
> threat of physical coercion, and other manifestations of public
> hostility.

Id. at 462–63.

Even though the NAACP had made such a showing, the court still turned to the question

of "whether Alabama has demonstrated an interest in obtaining the disclosures it seeks from

petitioner which is sufficient to justify the deterrent effect which we have concluded these

disclosures may well have on the free exercise by petitioner's members of their constitutionally

protected right of association."  Id. at 463.  After examining the issues at stake in the litigation,

the Court was "unable to perceive that the disclosure of the names of petitioner's rank-and-file

members has a substantial bearing" on the issues involved in the litigation.  Id. at 464.  The Court

held that the NAACP could withhold production of its (rank and file) membership lists, under the

protection of the Fourteenth Amendment.  Id. at 466.

a.  Restraint on associational rights

The first issue is whether disclosure of the children's and parents' names would create any

restraint on plaintiffs' rights of association.  Plaintiffs have submitted the Declaration of Linda

McMulty ("McNulty Decl.") (ECF No. 221-1), which asserts that McNulty personally has

witnessed LEAs call Child Protective Services "to make a completely meritless claim against a

parent who had advocated on behalf of her child."  McNulty Decl. ¶ 3.  She asserts that she has

"observed LEAs report students, whose parents had filed complaints on their children's behalf, as

truant."  Id.  She asserts that she has "witnessed school district personnel call an advocate

derogatory names, threaten to commence due process hearings against the parents, or use other

means to pressure parents to not use, or cooperate with, advocates who were promoting their

children's special education rights."  Id.  The parents have advised McNulty "that they are

withholding consent [to disclose their or their children's names] because of fear of retaliation and

1  retribution for belonging to an organization that advocates on behalf of children with disabilities,"

2  especially since the firestorm over the FRE 502(d) notice.  Id. ¶¶ 4, 5.  Defendant does not dispute

3  the factual showing, so the court considers it to be uncontroverted.

4      Defendant argues that "[a]n association cannot prevail on these objections if it has put its

5  membership information at issue by virtue of its claims against the defendant."  ECF No. 219 at 9

6  (citing Dawe v. Corrections USA, 2008 WL 1849802 at *14, 2008 U.S. Dist. LEXIS 51122 *41-

7  42 (E.D. Cal. 2008) (Brennan, M.J.)).  In Dawe, Judge Brennan found that defendant itself, in its

8  counter suit:

9          has put its membership lists at issue by virtue of its claims against
           Dawe, Loud and Harkins.  CUSA cannot fairly allege that these
10         defendants stole its membership lists and diminished its
           membership numbers without allowing defendants the opportunity
11         to rebut those claims with evidence.

12  Dawe, 2008 WL 1849802 at *14, 2008 U.S. Dist. LEXIS 51122 *41-42.

13      Defendant would be correct if plaintiffs had put their membership lists at issue.  That is

14  not the situation here.  In Dawe, the membership lists were themselves the subject of the counter

15  suit.  Counter-plaintiff CUSA alleged that its membership lists themselves had been stolen, or that

16  counter-defendant had made "unauthorized use of CUSA's membership list."  The Dawe ruling

17  simply prevented CUSA from alleging that counter-defendant had made unauthorized use of a

18  membership list, while refusing to disclose what the membership list contained.

19      Defendant's broader argument is wrong.  The right addressed in NAACP is the First

20  Amendment right of association.  Defendant cites no authority for the proposition that one's First

21  Amendment rights are waived by filing suit.  Cf. Paralyzed Veterans of Am. v. McPherson, 2007

22  WL 2428000 at *2, 2007 U.S. Dist. LEXIS 64813 at *6 (N.D. Cal. 2007) (Larson, M.J.) ("[t]he

23  First Amendment privilege is not waived when one brings, rather than defends against, a

24  lawsuit").

25                  b.  Relevance

26      The court must still consider the second question, which is, how great is defendant's need

27  for this information.  Here, defendant's argument is convincing.  Although the lawsuit is

28  statewide, plaintiffs have specifically alleged violations of the rights of 17 individual students.

1  See Complaint Exh. A.  Those allegations are incorporated into the complaint.  See Fed. R. Civ.

2  P. 10(c).  Defendant is at least entitled to examine the facts alleged regarding those 17 students.

3       Plaintiffs argue that the court has already determined that this lawsuit is not about any

4  individual plaintiff.  They cite the presiding district judge's order denying the motion to dismiss,

5  for the proposition that "this litigation '*does not pertain to violations of any particular children's*

6  *rights* ….'"  ECF No. 219 at 11 (emphasis in text) (citing ECF 25, 12:20-21).  However, this does

7  not mean that defendant is not entitled to discovery of the facts underlying the allegations of the

8  complaint.

9       Even if none of the 17 students will actually participate in the lawsuit, defendant is

10  entitled to know the facts underlying plaintiffs' claim that those 17 students' rights were violated.

11  Defendant is entitled to defend itself by showing that the conduct plaintiff is complaining about –

12  as exemplified by how those 17 students were treated – does not, in fact, violate the law.  It is

13  equally entitled to show that the conduct alleged never occurred at all.  In order to defend on

14  those bases, or others, defendant needs to know the facts that underlie the allegations about the 17

15  students.  It is simply not reasonable for plaintiffs to argue that they can make allegations against

16  defendant in their complaint and then prevent defendant from obtaining the information it needs

17  to challenge those allegations.

18       Plaintiffs point out that the seventeen students are merely "reflective" of the special

19  educational experiences of disabled California school children.  See Complaint ¶ 22 & n.1.

20  However, this is no basis for denying defendant discovery into those students' experiences.

21  Defendant is entitled to obtain discovery so that it can defend itself by, for example, showing that

22  the 17 representative school children actually received FAPE, and that when there was a problem,

23  the complaints filed by their parents were properly addressed and the problems promptly

24  corrected.

25       At oral argument, defendant made clear that it does not seek discovery of every student of

26  every member of the plaintiff organizations, but rather, only the 17 students identified in the

27  complaint, and any students that plaintiffs plan on using as witnesses.  Plaintiffs argue that they

28  cannot disclose the identities of these students or their parents without consent, apparently

1    because counsel made a private promise to the parents that they would not be identified.

2    However, plaintiffs have offered no authority entitling them to withhold information that they are

3    ordered to produce by this court. Nor have they explained how a promise counsel may have

4    made to their clients – that no discovery of their members' identities would occur – can bind this

5    court, or override an order requiring discovery.

6                              c. Protecting plaintiffs against retaliation

7            Although defendant is entitled to the information it seeks, that does not end this inquiry,

8    because plaintiffs' associational rights do not go away simply because defendant needs this

9    information. The Supreme Court did not have to address how to protect plaintiff's rights in

10   NAACP, because disclosure was denied on the basis that Alabama did not need the membership

11   list.

12           Here, the only risk plaintiffs identify, and back up with evidence, is the uncontroverted

13   risk of retaliation by the LEAs. Since the CDE is a party, and the premise of this lawsuit is that

14   the CDE has control over the LEAs,[8] this court can order the CDE, under pain of contempt, to

15   ensure that LEAs do not retaliate against any disclosed plaintiff or school child. To the degree

16   plaintiffs are concerned about abuse from other parents – arising from the FRE 502(d) uproar –

17   this can be avoided by ensuring that the discovery is conducted under already-existing

18   confidentiality rules.

19           B. Document Requests – Set One

20           Defendant's first document request is for "your association's membership lists for each

21   year, from 2012 to the present." ECF No. 219 at 16. As discussed above, this is relevant only to

22   the degree it seeks information about the 17 students and their parents, and any student or parent

23   plaintiffs will use as witnesses. Defendant has conceded at oral argument that it does not seek the

24   membership lists to the degree it would reveal a parent or student who is not among the 17

25   students described in the complaint and exhibits.

26

27   _____
     [8] "CDE must either ensure that the local educational agencies (LEAs) implement that core
     mandate or undertake the task itself." Complaint at 2.
28

1    The second document request is for documents that support plaintiffs' contention that

2    CDE harmed that particular child.  This is relevant for the 17 school children.

3        C.   Interrogatories – Set Two

4    The second set of interrogatories ask ordinary, unobjectionable questions: identify people

5    with knowledge; who assisted in preparing the complaint; identify persons identified by

6    description in the complaint; who helped prepare these interrogatory answers.  Interrogatories

7    1-3, 5 (Set Two) (see ECF No. 219 at 19-23, 24-25).  Plaintiffs offer the same objection to these

8    interrogatories, as it made to the document requests.  However, plaintiffs offer no explanation for

9    why those objections apply to these interrogatories, and the court knows of none.

10    The defendant also asks for all social media accounts and profiles plaintiffs have used

11    from 2008 to the present.  See Interrogatory No. 4 (Set Two) (ECF No. 219 at 23).  Defendant

12    asserts that it needs this "to investigate their claims of harm."  ECF No. 219 at 24.  Plaintiffs'

13    objection of lack of relevancy is well taken, as defendant has made no showing that anyone's

14    social media accounts have anything to do with this lawsuit or any allegations of harm.

15        D.   Document Requests – Set Two

16    Defendant requests all the documents that support the contentions made about each of the

17    17 students.  Doc. Requests 1-18 (Set Two) (see ECF No. 219 at 25-52).  Plaintiffs object that

18    defendant "has greater access to information" regarding the students.  The objection will be

19    overruled.  First, each of the 17 is identified by a pseudonym, so defendant does not know what

20    information it has that relates to any of the students.  Second, defendant does not know which of

21    the documents – even if it could identify them – plaintiffs will rely upon.

22    Defendant also requests all the documents that support the specified contention in the

23    complaint.  Doc. Requests 31, 35, 36, 55, 58-60, 64, 65, 67, 72, 78 (Set Two) (see ECF No. 219

24    at 53-62, 65-67).  Plaintiffs object that the request is vague and ambiguous as to time, that

25    defendant has better access to the information, that plaintiffs do not wish to disclose the identities

26    of the students, and that the information is protected by the attorney client privilege.  The

27    objections will be overruled.  The time period is the time period specified in the complaint.

28    Defendant does not know what documents plaintiff will rely on, and is entitled to find out.  As for

1   student information, the information can be produced confidentially to protect that information.

2   Finally, the attorney client objection was not accompanied by the required privilege log, and will

3   be overruled without prejudice to its renewal in proper form.

4       Doc. Requests 73-77 (see ECF No. 219 at 62-65), ask for communications through "social

5   media" that have anything to do with plaintiffs' children, as well as "activity logs" of social

6   media accounts.  This is entirely too broad, and has no stated connection to the allegations of the

7   complaint.  Defendant attempts to justify this request by referring to the Complaint at 15:19-21

8   and 16:4-8.  ECF No. 219 at 65.  However, the cited Complaint allegations refer to online surveys

9   by the CDE, not the plaintiffs' social media accounts.  The motion to compel production of these

10  documents will be denied.

11      E.  Attorneys' Fees

12      Defendant requests $6,800.00 in attorneys' fees – for the 40 hours counsel spent, at $170

13  per hour – on defendant's Motion To Compel.  ECF No. 219 at 66.  Because defendant's motion

14  will be granted almost in its entirety, and plaintiffs do not challenge the hours charged or the rate,

15  the court will exercise its discretion to grant the entire requested attorneys' fees to defendant.  See

16  Fed. R. Civ. P. 37(a)(5)(C) (the court may apportion fees where the motion is granted in part and

17  denied in part).

18          III.  PLAINTIFFS' MOTION FOR SANCTIONS

19      "Plaintiffs seek sanctions in the present amount of $943,548.78."  ECF No. 206-1 at 7.

20  "This motion is brought on the ground that the CDE has refused and continues to refuse to

21  produce documents and materials" in response to plaintiffs' first and second sets of requests to

22  produce documents.  ECF No. 206 at 2.  Plaintiffs also allege a course of conduct by defendant

23  that involved ignoring four court orders issued by Judge Mueller plus the order compelling

24  discovery that issued by the undersigned, and they allege that defendant engaged in generally

25  dilatory and unacceptable conduct.

26      A.  Fed. R. Civ. P. 37(b)(2)

27      Plaintiffs argue that they are entitled to attorneys' fees under Rule 37(b)(2) because

28  defendant failed to obey "five discovery orders" issued by "the trial court."  ECF No. 206-1 at 17.

1  Defendant argues that this Rule does not apply to four out of the five allegedly disobeyed orders,

2  because they do not "unequivocally compel" the production of certain documents, and that it has

3  not violated the one order that compelled discovery.

4      Rule 37(b)(2) only applies when the court has issued "an order to provide or permit

5  discovery." Fed. R. Civ. P. 37(b)(2)(A).  The Rule thus refers to an order compelling the

6  production of specific discovery, such as would occur when the court grants a motion to compel.

7  Cf. Henry v. Sneiders, 490 F.2d 315, 318 (9th Cir. 1974) ("[w]here oral proceedings

8  *unequivocally give a litigant notice that certain documents are to be produced*, the absence of a

9  written order does not preclude the entry of a default judgment for failure to comply") (emphasis

10  added), cert. denied, 419 U.S. 832 (1974).  Thus, Rule 37(b)(2) does not "authorize sanctions for

11  more general discovery abuse." Unigard Security Ins. Co. v. Lakewood Engineering & Mfg.

12  Corp., 982 F.2d 363, 368 (9th Cir. 1992).

13         1. District Judge's Order of February 20, 2014, ECF No. 47

14      This order was issued "to confirm the schedule outlined at status and to provide guidance

15  for resubmission of a proposed protective order." ECF No. 47 at 1.  Plaintiffs argue that the order

16  directed that discovery would "PROCEED," and that defendant violated the order by not

17  proceeding. ECF No. 206-1 at 15 ¶ 1.

18      In fact, Judge Mueller ordered that "[a]ll other discovery should PROCEED as usual, and

19  any disputes as to this discovery" should be set for hearing. ECF No. 47 at 2.  This is not an order

20  to produce specific discovery, it is an order that the *process* of discovery – which includes

21  objecting to discovery – should proceed.  Since the order does not order defendant to provide or

22  permit discovery, Rule 37(b)(2) does not apply.

23         2. District Judge's Order of May 5, 2014, ECF No. 60

24      This is a Stipulated Protective Order. ECF No. 60.  Plaintiffs argue that defendant did not

25  comply with the order because it redacted material, rather than labelling it "Confidential."  ECF

26  No. 206-1 at 15 ¶ 2.  However, the order itself does not order defendant to provide or permit

27  discovery, so Rule 37(b)(2) does not apply.

28  *////*

1          3. <u>District Judge's Order of February 10, 2015, ECF No. 91</u>

2          This order directs the parties to "meet and confer," to come up with a discovery plan, and

3   to refrain from filing discovery motions before the magistrate judge until a discovery schedule is

4   ordered. ECF No. 91. Plaintiffs argue that defendant met but did not confer, and otherwise did

5   not comply with the instructions in the order. However, the order itself does not order defendant

6   to provide or permit discovery, so Rule 37(b)(2) does not apply.

7          4. <u>District Judge's Order of November 3, 2015, ECF No. 127</u>

8          This order requires the parties to meet and confer and to propose a FRE 502(d) order. It

9   also adopts the e-Discovery Protocol. Plaintiffs complain that defendant did not meet and confer,

10  and that it produced documents in formats not sanctioned by the court. However, the order itself

11  does not order defendant to provide or permit discovery, so Rule 37(b)(2) does not apply.

12         5. <u>Magistrate Judge's Order of January 26, 2016, ECF No. 150</u>

13         This order partially grants plaintiffs' Motion To Compel (ECF No. 129), and orders the

14  production of documents. ECF No. 150. If defendant failed to obey this order, then it violated

15  Rule 37(b)(2).

16         Plaintiffs assert that "Defendant has produced no compliant responsive documents …."

17  ECF No. 206-1 at 16. However, plaintiffs offer no facts in support of their assertion. The only

18  factual source cited for the assertion is the Declaration of Rony Sagy ¶ 196. <u>See</u> ECF No. 206-1

19  at 16 ¶ 5. That Declaration (ECF No. 206-2) runs 64 pages, and has 205 numbered paragraphs of

20  factual allegations. But none of those allegations – including anything in ¶ 196 – states that

21  defendant did not produce documents as ordered. It may well be that by asserting no "*compliant*

22  responsive" documents were produced, plaintiff is alleging that even if defendant did produce,

23  production was not in the proper format. This interpretation, however, would be a guess, as there

24  is no explanation of any kind for this assertion in the Sagy Declaration. In short, plaintiffs direct

25  the court to no evidence of non-compliance with the order.

26         Meanwhile, defendant says it has produced documents, as ordered. ECF No. 215

27  at 27-28. Moreover, defendant has submitted evidence showing that it has been producing

28  ////

1   documents.  See Sanctions Declaration of Grant Lien ("Lien Sanctions Decl.") (ECF No. 215-1)

2   ¶¶ 31-34.

3          In short, plaintiffs have not shown that defendant is in violation of the January 26, 2016

4   order.  Therefore, no sanctions will be awarded under Rule 37(b)(2).

5          B.  Fed. R. Civ. P. 37(a)(5)

6          Plaintiffs argue that reasonable attorneys' fees are mandatory under Rule 37(a)(5)(A),

7   because their Motion To Compel was "granted."  ECF No. 206-1 at 18.  In fact, the motion was

8   granted in part, and denied in part, thus removing it from the mandatory fee requirement of that

9   rule.  Instead, the discretionary portion of the Rule applies, which provides that "if the motion is

10  granted in part and denied in part, the court may … apportion the reasonable expenses for the

11  motion."  Rule 37(a)(5)(C).

12         Defendant argues that it was substantially justified in refusing to produce.  However, part

13  of defendant's refusal to produce was plainly unreasonable.  It refused to produce documents

14  even though it conceded in court that it had no objection to the production:

15              As noted, defendant objected to every single one of plaintiffs'
                document requests.  At the hearing on this motion, however, it
16              became clear that even when defendant objected only to a portion
                of the request, it failed to produce the documents as to which it had
17              no objection.  For example, Second Set, Request 8 asks for the
                "Critical Elements Analysis Guide (CrEAG)," and documents
18              describing or related to it.  At the hearing, when asked about this
                request, defendant offered no objection to the CrEAG itself – which
19              apparently comprises only two documents ….

20  ECF No. 150 at 6 (Order).  There was no "substantial justification" for this conduct.

21         Defendant also objected to the discovery because of its state-wide nature.  That issue had

22  already been decided by Judge Mueller, and therefore this objection is also not substantially

23  justified.  In addition, this objection is an attempt to get around the district judge's decision

24  authorizing the state-wide nature of this lawsuit.  Defendant argues that this is a new objection,

25  but it is not.  Defendant has offered new arguments in support of its repeated objection to the

26  state-wide nature of discovery.

27         Some of the remainder of defendant's objections qualify as "substantially justified," even

28  though they were overruled: privilege (denied without prejudice to renewal in proper form);

1   discovery about non-disabled children (overruled); budgeting information (overruled); ACSE

2   reports (partially overruled); general objections of "vague, overbroad, burdensome, and not

3   proportional to the needs of the case" (overruled, but they could be renewed in proper form).

4        In summary, substantial justification was present for some of the objections and lacking

5   for others.  Therefore, some sanctions are warranted.  The amount and apportionment of those

6   sanctions is discussed below.

7        C.  Fed. R. Civ. P. 26(g)(1)(B)

8        Plaintiffs argue that defendant responded to discovery by "reflexively" objecting to

9   everything, rather than "reflecting" on what needed to be produced, and what needed to be

10  objected to.  ECF No. 206-1 at 21-22.  They argue that this attitude was intended to harass and

11  delay, in violation of Rule 26(g)(1)(B)(ii) (discovery responses and objections must not be

12  "interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly

13  increase the cost of litigation"), (g)(3) (sanction).

14       It appears that in this case, defendant's conduct is already captured by Rule 37 sanctions,

15  even if it did violate this Rule.  Therefore, the court will not impose separate sanctions for

16  possible violations of this rule, since, in this case, any such violation is based upon the same

17  conduct that warrants Rule 37 sanctions.

18       D.  Fed. R. Civ. P. 16(f)

19       Plaintiffs argue that defendant's counsel was "repeatedly unprepared or unwilling to

20  participate in status conference and court mandated meetings and then routinely ignored the

21  resulting orders," in violation of Rule 16(f)(1)(B), (C).  ECF No. 206-1 at 22.  Plaintiffs appear to

22  be referring to status conferences before the district judge presiding over this case.  See ECF

23  No. 206-2 at 18 ¶ 60 (referring to February 14, 2014 conference before the district judge, ECF

24  No. 46 (Minutes)); 55 ¶ 175 (referring to April 30, 2015 conference before the district judge, ECF

25  No. 100 (transcript)).

26       The undersigned believes that this matter can only be decided by the district judge, as she

27  is the one to know best whether defendant's counsel really was "unprepared" at conferences and

28  hearings before her, within the meaning of Rule 16, and what harm that may have caused.  This

1    matter will be referred back to the presiding district judge without a recommendation.

2          E.   The Court's Inherent Power

3          Plaintiffs argue that "Defendant's ongoing pattern of obfuscation, obstruction, avoidance

4    and defiance of the orders of this Court *demand* the conclusion that it has been acting for an

5    improper purpose, that is, to delay the litigation in the hope and expectation that Plaintiffs will not

6    be able to sustain the expense of the delay." ECF No. 206-1 at 22 (emphasis in text).  Defendant

7    denies that it has engaged in this conduct.  It argues that it has substantial justification for its

8    objections, and has been complying with the court's orders.

9          Before the court can impose "inherent-power sanctions," it must first find "bad faith, or

10   conduct tantamount to bad faith."  Gomez v. Vernon, 255 F.3d 1118, 1134 (9th Cir.), cert. denied,

11   534 U.S. 1066 (2001).  "Sanctions … are justified 'when a party acts *for an improper purpose* –

12   even if the act consists of making a truthful statement or a non-frivolous argument or objection."

13   Gomez, 255 F.3d at 1134 (emphasis in text).

14         The undersigned finds that in this case, any warranted sanctions can be addressed by

15   Rule 37, and therefore, there is no need at this time to go beyond the Federal Rules and invoke the

16   court's inherent power in this case.  See Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991) (in a

17   broad discussion of inherent powers, the Court states that "[b]ecause of their very potency, the

18   court's inherent powers must be exercised with restraint and discretion").

19         F.   Amount of Sanctions under Rule 37(a)(5)(C)

20           1.   Apportioning

21         Sanctions under Rule 37(a)(5)(C) are to be "apportion[ed]."  Rule 37(a)(5)(C).  Plaintiffs

22   seek $943,548.78 in attorney's fees.  However, as best the undersigned can tell from the

23   plaintiffs' voluminous submissions – 858 pages of briefing, declarations and exhibits, plus two

24   Excel spreadsheets – this covers nearly everything they have ever done in this litigation.

25   However, the fee award will be limited to the work relating to the Motion To Compel, which was

26   granted in part and denied in part.

27         This appears to be the breakdown of plaintiffs' total fee request (not limited to the Motion

28   To Compel):

| Amount | Explanation (all emphases are in text) | Sagy Sanctions Decl. (ECF No. 206-2) |
|---|---|---|
| $72,491.40 | "Sagy Law Associates' team spent overall **118.87 hours** negotiating the protective order and section 502(d), and incurred **$72,491.40** in fees in doing so." | ¶ 193 |
| $244,691.35 | "Since **February 21, 2014**, we have spent **$244,691.35** and in excess of 428.50 hours working on issues related to [the FRE 502(d)] notice." | ¶ 195 |
| $622,515.85 | "Between **February 21, 2014 and March 31, 2016**, we spent **$622,515.85** and in excess of 1154.85 hours working on issues related to databases, emails and network drives production, scope, motions to compel and motion for fees (Appendix B1 [ECF No. 206-12], Combined Tab, cells N225-226)." | ¶ 197 |
| **$939,698.60** | **Total (this is $3,850.18 less than the $943,548.78 total requested).** | |

Plaintiffs are therefore entitled to some portion of the $622,515.85, as some of that comes from the motion to compel and the motion for fees. To determine what portion of that amount is related to those two areas, the undersigned consults plaintiffs' Appendix B1. See ECF No. 206-12. The B1 totals seem to be broken down by "production" and by other categories. Therefore, looking only at fees for "production" – which appears to be a code for "this is related to the Motion To Compel" – this is how the $622,515.85 breaks down:

| Amount | Reason | Dates | Appx. B1 (ECF No. 206-12) |
|---|---|---|---|
| $183,793.10 | "Total Production"[9] | Jan,[10] Feb, Mar 2016 | p. 2 |
| $280,929.40 | " | Jan through Dec 2015 | p.3 |
| $157,793.35 | " | Feb through Dec 2014 | p.4 |
| **$622,515.85** | **Total** | | |

The next issue is what portion of the $622,515.85 is attributable to the portion of the Motion To Compel that was granted. Plaintiffs argue that only 12% of their motion was denied,

---

[9]  This is broken down into "Hearings," "Written Meet and Confer," "Review and Analysis of Discovery," "Legal Research," "Factual Research," "Motions To Compel" (I don't know what this is, or why it's listed separately from hearings, legal research and the rest), "Motions for Fees," "Joint Statements," "Prep for Hearings/Meetings," and "O/P Costs."  ECF No. 206-12.
[10]  The hearing on the Motion To Compel was January 13, 2016.  ECF No. 146.

1  based upon their view that the court "declin[ed] to compel responses to 8 of the 63 requests …."

2  ECF No. 206-1 at 21.  In fact, it is not clear that a proportionality analysis is so simple, or can

3  even be done here with any degree of confidence.  The Motion To Compel was denied as to *every*

4  request for documents "relating to" other requested documents.  ECF No. 150 ¶ 3.  The motion

5  was granted, but in limited form, regarding the Second Set, Request 15.  Id. ¶ 2.  It was denied

6  outright as to eight (8) requests, and partially denied as to one.  Id. ¶ 4.  The motion was overruled

7  outright as to some categories of information.  Id. ¶¶ 5, 6, 7.  Finally, the motion was overruled

8  outright, but with leave to renew in proper form, as to boilerplate objections regarding vagueness,

9  overbreadth and privilege.  Id. ¶¶ 8, 9.  In light of those rulings, the undersigned concludes that

10  plaintiff prevailed in approximately half of its motion.

11      The next issue is whether defendant had substantial justification for its objections to the

12  document requests.  As the court has previously noted, some of defendant's objections were not

13  substantially justified.  However, other objections were sustained, and therefore they were

14  substantially justified.  Finally, even among some of those objections that were overruled, a

15  substantial portion were allowed to be renewed in proper form.  The court concludes that

16  defendant was substantially justified for about half of its objections.

17      Therefore, the sanctions award under Rule 37(a)(5)(C) will be based upon one-quarter

18  (half of half) of the $622,515.85 attributable to the Motion To Compel and related fee request, or

19  $155,628.96.

20          2.  Rates

21      Plaintiffs seek fees assuming that "San Francisco is the relevant legal community."  They

22  offer no rates for Sacramento or the Eastern District, or any other community where the plaintiff

23  parents reside.  In explanation, plaintiffs assert that they sought representation in Sacramento, San

24  Francisco and the Bay Area.  McNulty Dec. (ECF No. 206-9) at 2 ¶ 4.  Specifically, plaintiffs

25  allege that Ms. Linda McNulty – a founder of plaintiff Morgan Hill Concerned Parents

26  Association and President of plaintiff Concerned Parents Association – "contacted more than ten

27  law firms and advocacy groups with experience in special education and systems change

28  litigation in San Jose, Sacramento, and the Bay Area."  Declaration of McNulty (ECF No. 206-9)

1  ¶¶ 1, 4.  However, according to plaintiffs, only Sagy & Assoc., of San Francisco, agreed to

2  represent them.  McNulty Decl. at 3 ¶ 6.

3       Plaintiffs' requested rates are:

4

| Attorney / Staff | Hourly Rate |
|---|---|
| Rony Sagy, Principal | $550-730[11] |
| Barbara Gately, of Counsel | $500-660 |
| Noga Firstenberg, of Counsel | $450 |
| Laura Bomes, Paralegal | $175-260 |
| Katy Sosnak, Paralegal | $200-260 |

9       Defendant argues that Sacramento is the appropriate legal community.  It further argues

10 that the prevailing rate in Sacramento for an attorney with more than 30 years of experience is

11 $350 per hour, citing Lin v. Dignity Health, 2014 WL 5698448 at *3, 2014 U.S. Dist. LEXIS

12 155980 at *7-8 (E.D. Cal. 2014) (Mueller, J.).

13      "[T]he general rule is that the rates of attorneys practicing in the forum district, here the

14 Eastern District of California – Sacramento, are used."  Gates v. Deukmejian, 987 F.2d 1392,

15 1405 (9th Cir. 1992) (Section 1988 fees).  The party seeking fees at a non-local rate must make a

16 showing to overcome this "presumption."  See Barjon v. Dalton, 132 F.3d 496, 501 (9th

17 Cir. 1997), cert. denied, 525 U.S. 827 (1998).  This showing may be made with evidence that

18 "'local counsel was unavailable, either because they are unwilling or unable to perform because

19 they lack the degree of experience, expertise, or specialization required to handle properly the

20 case.'"  Id. at 500 (quoting Gates, 987 F.2d at 1405).

21      Plaintiffs have failed to make the required showing.  First, plaintiffs have not made a

22 showing that *Sacramento* attorneys were unavailable.  Plaintiffs' declarations assert only that

23 plaintiffs approached ten advocacy groups and law firms in the San Francisco Bay Area, San

24 Jose, and Sacramento.  McNulty Decl. ¶ 4; Sagy Sanctions Decl. ¶¶ 3, 8.  These declarations do

25 not specifically assert that a single Sacramento law firm was approached.  Instead, they conflate

26 all "advocacy groups" and "law firms," and further group all entities approached in all three

27

---

[11]  The spread exists because there are different rates for each year.

28

1    places.  Thus, even if plaintiffs had not approached a single Sacramento law firm, they could have

2    filed exactly the same declarations.

3        Second, the declarations do not establish that Sacramento attorneys were *unavailable*.

4    There could be many reasons an attorney would decline to participate in this particular case,

5    having nothing to do with their unwillingness, inability or unavailability to handle this type of

6    case.  For example, a particular firm might believe that the particular complaint, as alleged, was

7    not meritorious.  The firm might be unwilling to work to with specific counsel, or might not be

8    willing to be co-counsel.  The firm might disagree with the strategy being pursued.  Of course,

9    none of these possibilities might be the case here, but plaintiffs have offered no insight into why

10    the attorneys they approached declined to participate, and it is their burden to do so.[12]

11        In <u>Gates</u>, the Ninth Circuit affirmed the use of San Francisco rates instead of local

12    Sacramento rates.  However, in that case, plaintiffs:

13
14
15
> offered numerous declarations of San Francisco and Sacramento attorneys which directly support their contention that Sacramento attorneys and law firms with the requisite expertise and experience to handle this type of complex institutional prison reform litigation were unavailable.

16    <u>Gates</u>, 987 F.2d at 1405.  No such declarations have been filed in this case.  To the contrary,

17    plaintiffs specifically refuse to reveal the identities of unnamed "private and public interest

18    advocacy groups" who, they claim, are considering becoming involved in the litigation.  Sagy

19    Sanctions Decl. ¶ 8.  Given the absence here of any evidence that "Sacramento rates preclude the

20    attraction of competent counsel," the court will not depart "from the local forum rule given in

21    *Davis*."[13]  <u>Barjon</u>, 132 F.3d at 501.

22        As noted, defendant asserts that the prevailing market rate for plaintiffs' attorneys is $350

23    per hour.  Plaintiffs do not dispute this rate, which appears to be correct.  <u>See, e.g.</u>, <u>Lin</u>, 2014 WL

24

---

25
26
27
[12]  Plaintiffs assert that certain unidentified advocacy groups and law firms (whose locations are also not specified), expressed "strong support for the mission the Associations sought to advance, as well as the need to bring a lawsuit addressing CDE's systemic failures."  Sagy Sanctions Decl. ¶ 8.  This does not establish that these entities wanted to participate in the lawsuit, only that they shared plaintiffs' general goals.

[13]  <u>Davis v. Mason County</u>, 927 F.2d 1473, 1488 (9th Cir.), <u>cert. denied</u>, 502 U.S. 899 (1991).

28

1   5698448 at *3, 2014 U.S. Dist. LEXIS 155980 at *7-8 (Mueller, J.) (citing cases and awarding

2   attorneys at rates of $350 to $200 per hour).  Plaintiffs seek paralegal fees at the rates of $175 to

3   $260 per hour.  Although defendant does not address these rates, the local rate for paralegals is

4   $75 per hour.  See, e.g., Orr v. California Highway Patrol, 2015 WL 9305021 at * 4, 2015 U.S.

5   Dist. LEXIS 170862 at *13 (E.D. Cal. 2015) (Shubb, J.).

6          These rates are *roughly* half (or less) of the average rates plaintiff requested.  Accordingly,

7   the base fee of $155,628.96 will be divided in half, for a total fee award of $77,814.48.

8                                  V.  CONCLUSION

9          For the reasons stated above, IT IS HEREBY ORDERED THAT:

10         1.  Defendant's motion for protective order (ECF No. 195) is DENIED.

11         Plaintiffs are AWARDED $10,425.00 in attorneys' fees under Fed. R. Civ. P. 26(c)(3) and

12  37(a)(5)(A).  Defendant shall pay this award within 30 days of this order.

13         2.  Defendant's motion to compel (ECF No. 196) is GRANTED in part and DENIED in

14  part.  Any production shall be made subject to the protective order and e-Discovery Protocol in

15  place at the time of the production.  See ECF No. 60 (current protective order), 127-1

16  (e-Discovery Protocol), 164 (modifying 127-1).

17         Defendant is AWARDED attorneys' fees under Rule 37(a)(5)(C) in the amount of $6,800.

18  Plaintiffs shall pay this award within 30 days of this order.

19             a.  The motion is GRANTED as to Interrogatory Requests (Set One) Nos. 1-4, but

20  only to the extent that they seek information about the 17 students pseudonymously identified in

21  the complaint, and their parents;

22             b.  The motion is GRANTED as to Document Requests (Set One) Nos. 1, 2, but

23  only to the extent they seek information about the 17 students pseudonymously identified in the

24  complaint, and their parents;

25             c.  The motion is GRANTED as to Interrogatory Requests (Set Two) Nos. 1-3, 5;

26             d.  The motion is DENIED as to Interrogatory Request (Set Two) No. 4;

27             e.  The motion is GRANTED as to Document Requests (Set Two) Nos. 1-18, 31,

28  35, 36, 55, 58-60, 64, 65, 67, 72, 78; and

1            e.  The motion is DENIED as to Interrogatory Requests (Set Two) Nos. 73-77; and

2            f.  Because plaintiffs have made an uncontroverted showing that they have in the

3    past faced retaliation by the LEAs for exercising their rights or advocating on behalf of their

4    children, the court ORDERS the CDE to ensure that no such retaliation occurs by the LEAs or by

5    any entity it controls.

6        3.  Plaintiffs' motion for sanctions (ECF No. 206) is GRANTED, in part, under

7    Rule 37(a)(5)(C) only, and is otherwise DENIED.

8        Plaintiffs are AWARDED attorneys' fees in the reduced amount of $77,814.48.

9    Defendant shall pay this award within 30 days of this order.

10       4.  Plaintiffs' Motion To Strike (ECF No. 216), is DENIED.

11       5.  The undersigned refers plaintiffs' motion for sanctions under Rule 16 (ECF No. 206-1

12   at 22), back to the presiding district judge.  Because the undersigned lacks the information needed

13   to make a recommendation on the matter, the matter is referred back without a recommendation.

14   DATED: August 17, 2016

15   _____

16   ALLISON CLAIRE
     UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28