UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORGAN HILL CONCERNED PARENTS ASSOC., CONCERNED PARENTS ASSOC., <br><br> Plaintiffs, <br><br> v. <br><br> CALIFORNIA DEPARTMENT OF EDUCATION, <br><br> Defendant. | No. 2:11-cv-3471 KJM AC <br><br> ORDER |

After carefully considering the parties' responses to the court's order to show cause, the court STAYS this action until April 20, 2018, resolving the order to show cause, ECF No. 339, and CDE's pending ex parte application for a stay, ECF No. 346.

I.     BACKGROUND

Plaintiffs Morgan Hill Concerned Parents Association and Concerned Parents Association ("plaintiffs") allege defendant California Department of Education ("CDE") is violating its obligations under the Individuals with Disabilities Education Act (IDEA) and Section 504 of the Rehabilitation Act to ensure that all children with disabilities in California receive a "free appropriate public education," otherwise known as a FAPE. First Am. Compl., ECF No. 6, at 1-2. Plaintiffs allege that CDE is failing to adequately monitor, investigate or enforce the

1

provision of FAPE in local school districts. *Id.* at 2. Plaintiffs seek declaratory and injunctive relief requiring CDE to adopt and implement "a statewide monitoring, investigative and enforcement model that verifiably measures and ensures the provision of FAPE . . . ." *Id.* at 4.

CDE is currently implementing a Corrective Action Plan (CAP) concerning its IDEA monitoring obligations under the supervision of the United States District Court for the Northern District of California. *See* ECF No. 2330 in *Emma C. v. Torlakson*, Case No. 3:96-cv-4179 (VC). On November 21, 2017, this court issued an order to show cause why this action should not be stayed pending completion of the remedial proceedings in *Emma C. v. Torlakson*, Case No. 3:96-cv-4179 (VC) or, in the alternative, why this action should not be transferred to the United States District Court for the Northern District of California for possible relation to *Emma C.* OSC, ECF No. 339.

CDE filed a response on December 12, 2017. CDE Resp., ECF No. 343. That day, plaintiffs also filed a response. Pls.' Resp., ECF No. 344. Although the parties disagree as to whether a stay is warranted, both agree transfer to the Northern District is inappropriate at this juncture. CDE Resp. at 4-8; Pls.' Resp. at 15-17. On February 8, 2018, CDE filed an ex parte application to stay discovery pending resolution of the order to show cause, ECF No. 346, which plaintiffs oppose, ECF No. 347.

As explained below, the court issues a temporary targeted stay pending a March 26, 2018 hearing in *Emma C.* The stay, which resolves the pending order to show cause and CDE's ex parte application, will continue until April 20, 2018, at which time the court will hold a further status conference.

I. LEGAL STANDARD

"A district court has inherent power to control the disposition of the causes on its docket in a manner to promote economy of time and effort for itself, for counsel, and for litigants." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1111 (9th Cir. 2005) (quoting *Levya v. Certified*

*Grocers of California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979)); *Levya*, 593 F.2d at 863-64 ("This rule . . . does not require that the issues in such proceedings are necessarily controlling of the action before the court.").

In determining whether a stay is warranted, the court must weigh the competing interests resulting from granting or declining a motion to stay. *Lockyer*, 398 F.3d at 1110 (citations omitted). The competing interests include: (1) the possible damage that may result from granting a stay, (2) the hardship or inequity a party may suffer in being required to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law expected to result from a stay. *Id.* (citations omitted). "[I]f there is even a fair possibility that the stay for which he prays will work damage to some one else," the moving party "must make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255 (verbatim quote). Furthermore, "a stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Leyva*, 593 F.2d at 864; *see Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) ("Generally, stays should not be indefinite in nature."). "The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citing *Landis*, 299 U.S. at 255).

III. DISCUSSION

    A. <u>Possible Damage</u>

Plaintiffs contend they face considerable damage should a stay issue because they will be unable to pursue critical discovery and will be unjustifiably delayed in seeking relief for their "urgent [claims], implicating . . . the statutory rights of children with disabilities to a meaningful education." Pls.' Resp. at 6, 13. Moreover, plaintiffs doubt the value of a stay, noting, (1) *Emma C.* concerns only K-8 students with disabilities at Ravenswood City School District ("Ravenswood") while the instant action concerns all children with disabilities in the State of California, and (2) *Emma C.* implicates only CDE's monitoring obligations while

/////

plaintiffs here allege CDE is not fulfilling its monitoring, investigation and enforcement obligations. *Id.* at 5-6.

   B.   Hardship or Inequity in Going Forward

CDE argues a stay "is warranted because the final resolution in *Emma C*. . . . may be instructive or directive on the statewide system as a whole." CDE Resp. at 2. CDE further suggests a stay may ultimately help focus the parties' discovery plans. *See id.* at 3. Furthermore, CDE's compliance with its monitoring obligations under the *Emma C.* consent decree does implicate to some degree CDE's "statewide system" for monitoring. *See Emma v. Eastin*, 673 F. App'x 637, 640 (9th Cir. 2016). In fact, the *Emma C.* court has rejected CDE's prior attempts to limit "the scope of the Court's examination . . . to the district-level system," and has "affirmed the Monitor's determination that he needed to review the state-level system in order to evaluate its application in Ravenswood." *Emma C. v. Eastin*, No. 96-CV-04179-TEH, 2015 WL 5029283, at *8 (N.D. Cal. Aug. 25, 2015), *aff'd sub nom. Emma v. Eastin*, 673 F. App'x 637 (9th Cir. 2016) (citation omitted). As the Ninth Circuit noted, "the State itself appears to have chosen to turn its state-level obligation under the Consent Decree to monitor Ravenswood into an obligation to monitor school districts statewide—by choosing to present the court with only a uniform statewide monitoring approach." *Emma*, 673 F. App'x at 640.

Moreover, because the certified class in *Emma C.* includes all past, present and future students with disabilities at Ravenswood, plaintiffs in the instant action necessarily seek to further the interests of *Emma C.* class members. *See* ECF No. 2330 at 4 in *Emma C. v. Torlakson*, Case No. 3:96-cv-4179 (VC) (noting certified class consists of "all past, present, and future children with disabilities who reside in the Ravenswood District"); *see also* Pls.' Resp. at 10 (explaining plaintiffs "seek[] relief on behalf of all children with disabilities in the State of California who are being denied FAPE . . ."). Accordingly, CDE's compliance with obligations imposed in this action pertaining to elementary school students, if any, will implicate CDE's *Emma C.* monitoring requirements at Ravenswood, and vice versa. To the extent any remedial monitoring plan that this court might issue were to conflict with *Emma C.*'s consent decree,

/////

4

CDE's fulfillment of its monitoring obligations at Ravenswood would comply with its monitoring obligations in this action, or its *Emma C.* monitoring obligations, but not both.

### 3. Orderly Course of Justice

Plaintiffs acknowledge that "both cases call for remedial monitoring plans" and say they "anticipate drawing on the considerable expertise and knowledge of the *Emma C.* Court Monitor," though they contend the actions "only incidentally intersect." *See* Pls.' Resp. at 17. It appears to this court that the relationship between the instant action and *Emma C.* is more than incidental, and that the remedial proceedings in *Emma C.* will inform the proceedings here. Furthermore, clarity on the intersection between these two cases may be forthcoming, as the *Emma C.* court will consider the parties' newly proposed processes for the court's evaluation of state compliance on March 26, 2018. *See* ECF No. 2350 at 1 in *Emma C. v. Torlakson*, Case No. 3:96-c0v-4179 (VC). A limited stay here pending the outcome of the *Emma C.* status conference is warranted.

The court is cognizant of the differences between these cases and plaintiffs' concerns that a stay would sweep too broadly and cause more harm than it would avoid. Thus, after careful consideration, the court determines a temporary targeted stay is appropriate: The court STAYS discovery related to CDE's monitoring obligations at K-8 schools until April 20, 2018. On April 20, 2018, the court will hold a status conference. The parties are ORDERED to jointly file a status statement seven days prior to the status conference. The statement should indicate whether and how the March 26, 2018 hearing in *Emma C.* informs this action. In light of this order, CDE's ex parte motion to stay discovery pending resolution of the order to show cause, ECF No. 346, is DENIED as MOOT.

IT IS SO ORDERED.

DATED: March 5, 2018.

_____
UNITED STATES DISTRICT JUDGE

5