UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORGAN HILL CONCERNED PARENTS ASSOC., CONCERNED PARENTS ASSOC.,<br><br>Plaintiffs,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF EDUCATION,<br><br>Defendant. | No. 2:11-cv-3471 KJM AC<br><br>ORDER |

The court previously issued a limited stay of discovery to determine how remedial proceedings in a similar case affect this case, if at all. *See* ECF No. 349. That stay expired on April 20, 2018. After carefully considering the parties' positions and for reasons explained below, the court now TRANSFERS this action to the United States District Court for the Northern District of California.

I.  BACKGROUND

Plaintiffs Morgan Hill Concerned Parents Association and Concerned Parents Association ("plaintiffs") are associations of parents of children with disabilities attending elementary, middle and high schools throughout California. First Am. Compl. ("FAC"), ECF No. 6 ¶ 4. Plaintiffs allege defendant California Department of Education ("CDE") is violating its obligations under the Individuals with Disabilities Education Act ("IDEA") and Section 504 of

1

the Rehabilitation Act to ensure that all children with disabilities in California receive a "free appropriate public education," otherwise known as FAPE. FAC at 1-4.[1] Specifically, plaintiffs allege that CDE is inadequately monitoring, investigating and enforcing the provision of FAPE in school districts statewide. *Id.* Plaintiffs seek declaratory and injunctive relief requiring CDE to adopt and implement "a statewide monitoring, investigative and enforcement model that verifiably measures and ensures the provision of FAPE . . . ." *Id.* at 4; 34-35.

As this court learned in late 2017, under Judge Chhabria's supervision in the Northern District of California, CDE is currently implementing a consent decree governing its IDEA monitoring obligations. *See Emma C. v. Torlakson*, Case No. 3:96-cv-4179-VC (N.D. Cal.). The *Emma C.* certified class includes all past, present and future children with disabilities who reside in the Ravenswood City School District. *See Emma C.*, ECF No. 2330 at 3 (Jt. Status Conf. Statement). Ravenswood comprises kindergarten through eighth grade (K-8) schools. *Id.* Though the *Emma C.* consent decree obligation technically is limited to Ravenswood, CDE has "chosen to turn its state-level obligation under the Consent Decree to monitor Ravenswood into an obligation to monitor school districts statewide—by choosing to present the court with only a uniform statewide monitoring approach." *See Emma v. Eastin*, 673 F. App'x 637, 640 (9th Cir. 2016). Accordingly, the *Emma C.* court has rejected CDE's attempts to limit "the scope of the Court's examination . . . to the district-level system." *Emma C.*, ECF No. 2095 at 14-15, *aff'd, Emma*, 673 F. App'x at 640.

On November 21, 2017, this court issued an order to show cause why this action should not be stayed pending completion of the remedial proceedings in *Emma C.* or, in the alternative, why this action should not be transferred to the Northern District. ECF No. 339. CDE urged the court to issue a stay, but opposed transfer. CDE Resp., ECF No. 343. Plaintiffs opposed a stay and generally opposed transfer, but noted that "emerging facts" may establish transfer best "advance[s] the overarching goal of judicial efficiency and, therefore, the 'interests of justice.'" Pls.' Resp., ECF No. 344 at 15. After reviewing the parties' responses, the court

---

[1] All citations to the parties' briefs refer to ECF page numbers, not the briefs' internal pagination.

2

stayed discovery on CDE's monitoring obligations at K-8 schools pending a March 26, 2018 status conference in *Emma C.* that might provide "clarity on the intersection between these two cases." Stay Order, ECF No. 349 at 5 (March 6, 2018). At the *Emma C.* status conference, as Judge Chhabria confirmed in a subsequent order,[3] CDE stated it will not differentiate between its monitoring of Ravenswood and monitoring of other districts, nor will it devise a separate monitoring system for Ravenswood. *Emma C.*, ECF No. 2387 at 1 (order confirming CDE will continue to submit its "normal statewide system for monitoring school districts in California, as opposed to adopting a special monitoring system for Ravenswood"). Moreover, CDE's obligations under federal law mirror its obligations under the consent decree. *Id.* at 2 (explaining the court will lift the consent decree if CDE establishes compliance with federal law). Further, the *Emma C.* court ultimately will determine whether CDE's statewide monitoring system complies with federal law, not merely whether CDE adequately monitors Ravenswood. *Id.* at 1 ("[A]s a practical matter, the task for the Court is to review the state's system for monitoring school districts throughout California, to ensure that the system is adequate to ensure that districts like Ravenswood are complying with federal law").

On April 19, 2018, this court held a status conference to discuss *Emma C.* and revisit the propriety of a partial stay. ECF No. 355 (Hr'g Mins.); Tr., ECF No. 359; *see* Jt. St., ECF No. 353. Arguing the resolution of *Emma C.* will moot some or all of this case, CDE urged the court to stay this case in its entirety "until the conclusion of the evidentiary hearings in *Emma C.*" or at least until the *Emma C.* court issues further orders on the timeline and substance of its compliance hearings. Jt. St. at 23; Tr. at 19:21-20:5. Plaintiffs continued to oppose a stay, arguing the overlap between these cases remains unclear and contending plaintiffs are entitled to discovery that may not be available in *Emma C. Id.* at 5:1-15; 24:17-20; 25:4-9. Unable to

---

[3] This May 18, 2018 order is part of the *Emma C.* court's ongoing effort to clearly explain in one document what the state must do to establish compliance with federal law, "thereby allowing for dissolution of the consent decree." *Emma C.*, ECF No. 2387 at 1. The order "supersedes the 'Corrective Action Plan'" that has guided the parties over the past several years and establishes a four-phase process to determine CDE's compliance will with federal law. *Id.* at 2.

3

determine when *Emma C.*'s remedial proceedings will conclude[4] and unwilling to relieve CDE of its burden to demonstrate a stay is warranted, the court declined sua sponte to issue a further stay. Tr. at 17:15-18-6. The stay automatically expired the next day. Stay Order at 5 (staying proceedings "until April 20, 2018").

Given the overlap now apparent between the two cases, and to avoid duplication of effort and inconsistent results, the court TRANSFERS this matter to the Northern District. Subject to that court's oversight, plaintiffs may continue in their efforts to seek discovery in this case.

II. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The purpose of Section 1404(a) "is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses, and the public against unnecessary inconvenience and expense[.]'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26, 27 (1960)).

The court first determines whether the case could have been brought in the transferee forum and then considers the convenience of the parties and witnesses and the interest of justice. 28 U.S.C. § 1404(a). In this analysis, the court may consider several factors, including the plaintiffs' choice of forum, ease of access to the evidence, each forum's familiarity with the applicable law, the feasibility of consolidation, local interest in the controversy, and each forum's relative congestion and time to trial. *Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009); *see Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000) (reciting similar factors). "No single factor is dispositive, and a district court has broad discretion to adjudicate motions for transfer on a case-by-case basis." *Ctr. for Biological Diversity v.*

---

[4] After the stay in this matter expired, the *Emma C.* court stated, "[i]f the state is able to show substantial compliance with federal law at each of the four phases, it is anticipated that the consent decree will be lifted in 2020." ECF No. 2387 at 2.

4

*Kempthorn*, No. 08-1339, 2008 WL 4543043, at *2 (N.D. Cal. Oct. 10, 2008) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Sparling v. Hoffman Constr. Co., Inc.*, 864 F.2d 635, 639 (9th Cir. 1988)). Further, the court may transfer a case sua sponte if the parties have had an opportunity to present their views on the issue. *Pavao v. Unifund CCR Partners*, 934 F. Supp. 2d 1238, 1242 (S.D. Cal. 2013) (citing *Costlow v. Weeks*, 790 F.2d 1486, 1488 (9th Cir. 1986)); *Mix v. Neeb*, No. 2:14-CV-01594-KJM-AC, 2014 WL 6469130, at *2 (E.D. Cal. Nov. 17, 2014); 15 B. Wright & Miller, Fed. Prac. & Proc. § 3844 (4th ed. 2018) ("The language of the statute is broad enough that a district court can order transfer on its own initiative.").

III. DISCUSSION

    A. Whether This Action "Might Have Been Brought" in the Northern District

Section 1404 permits transfer only to a district where the action "might have been brought," absent consent of all parties. 28 U.S.C. § 1404(a). The "phrase 'where it might have been brought' refers solely to districts where [the plaintiff] could have originally filed suit" and may not be unilaterally expanded by the defendant. *In re Bozic*, 888 F.3d 1048, 1053 (9th Cir. 2018) (citing *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960)).

Although they decline to address the issue, plaintiffs could have properly brought this suit in the Northern District. *See* Pls.' Resp. at 7 n.2. CDE concedes the point. CDE Resp. at 5. The plaintiff organizations' members include parents whose children allegedly were denied FAPE while attending schools in Morgan Hill Unified School District, San Francisco Unified School District and San Jose Unified School District, all of which are in the Northern District. *See* FAC ¶ 4. Accordingly, "a substantial part of the events or omissions giving rise to the claim occurred" in the Northern District. *See* 28 U.S.C. § 1391(b)(2). Moreover, plaintiffs may sue a state agency in any city in which the California Attorney General has an office, and the California Attorney General has an office in San Francisco. Cal. Civ. Proc. Code § 401(1); *Med. Dev. Int'l v. California Dep't of Corr. & Rehab.*, No. CIV 2:07-2199 WBS EFB, 2010 WL 347901, at *2 n.2 (E.D. Cal. Jan. 22, 2010); *Straus Family Creamery v. Lyons*, 219 F. Supp. 2d 1046, 1048 (N.D. Cal. 2002). Thus, the first step of the transfer inquiry is satisfied.

/////

B. <u>Convenience of the Parties and Witnesses</u>

CDE contends that because its headquarters are in Sacramento, along with most of the relevant witnesses and evidence, the convenience factor weighs against transfer. CDE Resp. at 5-7. "Plaintiffs do not believe that the Northern District represents a more convenient venue than the Eastern District," but do not elaborate on the point. *See* Pls.' Resp. at 15.

Any inconvenience arising from transfer to the Northern District, and presuming assignment to a judge sitting in the San Francisco federal courthouse, which sits roughly 90 miles from Sacramento, is slight. Both plaintiffs' counsel and the special master this court appointed are based in San Francisco. CDE's counsel and witnesses are based in Sacramento, but the same is true in *Emma C.*, which suggests any inconvenience to CDE is manageable. *See, e.g.*, *Emma C.*, ECF No. 2366 (hearing minutes reflecting CDE policymakers' attendance at March 26, 2018 hearing); *Emma C.*, ECF No. 2379 (hearing minutes indicating CDE policymakers also attended May 7, 2018 hearing). And plaintiffs' witnesses presumably are located throughout California. *See* FAC ¶ 4 (alleging children of plaintiffs' members attend schools throughout California). Moreover, although CDE represents that relevant evidence is in Sacramento, it does not concretely explain why it would be difficult to access this evidence in the Northern District, or address how CDE is managing these difficulties or the costs involved in *Emma C. See* CDE Resp. at 6 (arguing CDE would face an "enormous" burden because it has produced nearly half a million documents in this case); *Med. Dev. Int'l*, 2010 WL 347901, at *5 (finding inconvenience posed by transfer was "not considerable" in part because the plaintiff did "indicate[] how it would be materially inconvenienced by issuing discovery requests for electronic and paper documents a mere ninety miles from Sacramento"); *Mays v. Wal-Mart Stores, Inc.*, No. 17-CV-07174-LHK, 2018 WL 1400468, at *5 (N.D. Cal. Mar. 19, 2018) (finding location of evidence was neutral in transfer analysis because the defendant did not state whether evidence was stored in transferor district "as opposed to an online database, for example"). In short, neither party has shown transfer would be particularly inconvenient: Plaintiffs offer no concrete argument on this point, and despite CDE's arguments to the contrary, its active role in *Emma C.* for nearly 22 years

/////

suggests it can capably defend itself in the Northern District with minimal inconvenience. This factor tips only slightly against transfer, if at all.

### C. Plaintiffs' Choice of Forum

Plaintiffs' choice of forum is not dispositive in this case. While the plaintiff's choice of forum is typically entitled to significant weight, under certain circumstances, including "in representative actions, where the plaintiff seeks to vindicate rights of others" or where "the plaintiff is not a resident of the forum," the plaintiff's choice of forum is accorded less weight. 15 B. Wright & Miller, Fed. Prac. & Proc. § 3848 (4th ed. 2018). Here, plaintiffs are two organizations for parents of children with disabilities throughout the state of California and purport to represent a "class of 700,000 students on whose behalf this litigation is being pursued." FAC ¶ 4; Pls.' Resp. at 16. Although they have not pursued this case as a Rule 23 class action, plaintiffs seek to represent the interests of others and presumably reside throughout California. Moreover, in discussing whether transfer is appropriate, plaintiffs never mention their reasons for bringing this case in the Eastern District in the first instance or ask the court to defer to their choice. Accordingly, although plaintiffs' choice of forum generally weighs against transfer, plaintiffs' choice here does not.

### D. Interest of Justice

The interest of justice strongly favors transferring this action to the Northern District to conserve judicial resources and avoid inconsistent results. *See* 28 U.S.C. § 1404(a); *Cont'l Grain Co. v. The FBL585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."). These cases are not identical. As plaintiffs note this action may more significantly implicate the rights of infants, pre-school and high school students than *Emma C.* does. *See* Pls.' Resp. at 5. The two cases nonetheless are closely related and involve the same issues. Plaintiffs in both actions share a common goal: they seek a CDE monitoring system that complies with federal law. The *Emma C.* court is currently determining whether CDE's statewide system achieves that goal. Put differently, the CDE system at issue in *Emma C.* is the same system plaintiffs seek to affect

7

here. *See* FAC at 4 (plaintiffs seek declaratory and injunctive relief requiring CDE to adopt and implement "a statewide monitoring, investigative and enforcement model that verifiably measures and ensures the provision of FAPE . . . ."); *Emma C.*, ECF No. 2387 at 1 ("[T]he task for the Court is to review the state's system for monitoring school districts throughout California, to ensure that the system is adequate to ensure that districts like Ravenswood are complying with federal law.").

Transfer will capitalize on the Northern District's two decades of experience in a highly similar action. *See Madani v. Shell Oil Co.*, No. 07-4296, 2008 WL 268986, at *2 (N.D. Cal. Jan. 30, 2008) ("Judicial resources are conserved when an action is adjudicated by a court that has already committed judicial resources to the contested issues and is familiar with the facts of the case.") (citation and internal quotation marks omitted). While Judge Chhabria is relatively new to the case, *Emma C.* is much further along than the case in this court, and appears to be on a track to resolution in the near future. The Northern District court is immersed in the same legal issues this case presents, and it is well versed in the intricacies of CDE's statewide monitoring system. For example, in his almost twenty years serving as the *Emma C.* court monitor, Mark Mlawer has filed numerous evaluations of CDE's processes and systems, including substantive evaluations of CDE's IDEA compliance for districts throughout California. *See*, *e.g.*, *Emma C.*, ECF No. 2259 (monitor's report addressing in part CDE's annual IDEA determinations for school districts throughout the state). The *Emma C.* court will continue to expend judicial resources on these issues and the factual record implicated by them as it reviews CDE's evidence-backed submissions purporting to demonstrate IDEA compliance. *See Emma C.*, ECF No. 2387 at 2-6 (order describing showing CDE must make to comply with IDEA annual data collection and annual data use requirements).

Moreover, transfer best mitigates the risk of inconsistent results presented by these two cases. *See Argonaut Ins. Co. v. Mac Arthur Co.*, No. 12-3878, 2002 WL 145400, at *4 (N.D. Cal. Jan. 18, 2002) ("The best way to ensure [] consistency is to prevent related issues from being litigated in two separate venues."). Plaintiffs' claims here substantially overlap with the remedial
/////

proceedings in *Emma C.* Plaintiffs' claims arise from "three broad categories of systemic IDEA violations," which the court previously summarized as follows:

> (1) The CDE monitors local school districts' efforts to comply with the IDEA only superficially. It does not ask for meaningful data or verify the accuracy of data it receives. It analyzes data selectively and turns a blind eye to negative trends. . . .
>
> (2) The CDE does not truly investigate the complaints it receives. In its investigations, it relies on unverified reports prepared by allegedly deficient school districts. . . .
>
> (3) The CDE takes no action to meaningfully enforce school districts' obligations under the IDEA. It requires only that school districts adopt policies, not implement those policies, and it is satisfied with shallow promises of future effort. It does not verify compliance, and when it does, it does so by sampling student data after advanced warning. School districts can therefore sanitize their records. . . .

ECF No. 313 at 4-5 (citing FAC at 13-32). The *Emma C.* court's four-phase compliance framework will evaluate CDE's "system for collecting data from school districts," "analyzing the data and using it to identify school districts that may not be doing an adequate job of educating children with disabilities," its monitoring and enforcement activities, and its written policies "to memorialize and explain [CDE monitoring systems] to school districts." *Emma C.* ECF No. 2387 at 2. Plaintiffs here effectively call upon this court to make the same determinations, raising the potential this court will reach different conclusions that clash with the *Emma C.* court's determinations. Transfer best minimizes this risk of inconsistent results.

Ultimately, both parties overstate the differences between the two cases and understate the benefits of transfer. *See* CDE Resp. at 7-8 (arguing *Emma C.* concerns only Ravenswood and there is little risk of inconsistent results because the cases are at different stages); Pls.' Resp. at 15-17 (same). While CDE has disclaimed similarities between the cases and argued there is little risk of inconsistent results, *see* CDE Resp. at 7, it has also repeatedly pressed the court to enter an indefinite stay, arguing *Emma C.*'s resolution will "moot some or all of *Morgan Hill*." Jt. St. at 23; *id.* at 21 (arguing "any judicial conclusion related to the CDE's ability to adequately monitor the Ravenswood School District necessarily requires the Court to render a judicial conclusion about the statewide monitoring system's compliance, as a whole,

9

with the IDEA"). CDE's positions are incompatible. Similarly, plaintiffs overemphasize the differences between the cases, but ignore the indisputable impact *Emma C.* will have on this action. *See, e.g.*, Jt. St. at 5 (claiming there is no "clarity on either the specific issue of the intersection between the[se] two IDEA cases or, more generally, the status of the CDE's efforts to redesign and implement a remedial monitoring plan responsive to the *Emma C.* CAP").

Having devoted significant resources to determining precisely where these cases overlap, where they diverge and where efficiencies may be achieved, the court is satisfied that both cases will fare better if they are before the same court. Judge Chhabria, who is shepherding *Emma C.* through its final phases, is best suited to take the helm. Because transfer serves judicial economy, avoids unnecessary duplication of effort and expenses among the parties and reduces the risk of inconsistent results, the interest of justice tips the analysis in favor of transfer.

### E. Special Master

Within 14 days of this order, the Special Master assigned to this case shall submit an invoice for outstanding services rendered. His submission and any related party submissions shall be filed in accordance with the process outlined in ECF No. 317. The Special Master will remain with this case upon transfer, subject to Judge Chhabria's subsequent orders.

### F. FERPA Objections

The court received multiple objections from parents and students in response to the Family Education Rights and Privacy Act of 1974 (FERPA) notice published by CDE from February through April 2016. *See* ECF No. 116 at 5-7 (order finding disclosure of educational records in this action would not violate FERPA if parents and students were provided notice and an adequate protective order delineated use of the disclosed information); ECF No. 127 at 3 (ordering parties to submit proposed FERPA notices for the assigned magistrate judge's review and approval); ECF No. 151 (magistrate judge's approval of FERPA notice and objection form and order for publication). The FERPA notice instructed objecting parties to mail objections to the court and write confidential letters addressed to the undersigned by April 1, 2016, and advised objections would be maintained under seal. ECF No. 151-1 at 4-5. The court then received innumerable objections. *See* ECF No. 164 at 4-7 (describing public response to FERPA notice

and addressing objections en masse). The objections currently are archived in sealed boxes in a secure room. *Id.* at 9. As the court noted in its prior orders, although FERPA requires notice and an opportunity to object, a student or parent's consent is not required when, as here, disclosure is court-ordered and subject to a protective order. ECF No. 116 at 6; ECF No. 164 at 4. It follows, then, that the court is not required to rule on or review objections individually. *See* ECF No. 164 at 6 Further, the court has not identified any authority that requires the court to maintain the objections or file them under seal or transfer them to the Northern District. Accordingly, any party may show cause within 14 days of this order why the court may not destroy the objections at this time.

F. <u>CONCLUSION</u>

Within fourteen days, the special master will submit an invoice for any outstanding services rendered. Also within fourteen days the parties may show cause, if any, as to why the FERPA objections received in this action should not be destroyed.

This matter is TRANSFERRED to the Northern District of California. Immediately upon this matter's being assigned a case number in the Northern District, the parties are instructed to promptly file a notice of related cases identifying this case and *Emma C.* as related in accordance with the Northern District's local rules.

This case is CLOSED.

IT IS SO ORDERED.

DATED: June 6, 2018.

_____
UNITED STATES DISTRICT JUDGE

11